EXHIBIT J



U.S. Department of Justice

Bureau of Alcohol, Tobacco,
Firearms and Explosives

Washington, DC 20226

www.atf.gov

NOV 1 2 2019

Azuma Corporation
P.O. Box 340
Alturas, California, 96101-0340

**INTRODUCTION**

The Prevent All Cigarette Trafficking (PACT) Act, 15 U.S.C. § 375 *et seq.*, requires that any person, who ships cigarettes into a State, must comply with applicable State, tribal and local law. Azuma Corporation, Inc. (Azuma) ships untaxed, unstamped, contraband cigarettes, which may not be lawfully sold in California, to a company which is in the State of California and fails to comply with governing California laws in violation of the PACT Act. Since Azuma's customer is not lawfully operating, these shipments are shipments to consumers and are delivery sales under the PACT Act. These shipments are in interstate commerce under the PACT Act, although the PACT Act does not require that delivery sales be in interstate commerce for the PACT Act to apply. The Supreme Court and Federal Courts of Appeal have unanimously held for decades that States can regulate and tax specific on-reservation Tribal sales of cigarettes and that Tribes must comply with non-discriminatory State laws when they are engaged in off-reservation activity. Thus, the PACT Act certainly does not expand State jurisdiction and there are no ambiguities present here. The PACT Act is a self-executing statute which does not require ATF to implement regulations to enforce the statute. Moreover, ATF's position on aforementioned issues has been consistent since the PACT Act was enacted. Accordingly, Azuma's operations are in violation of the PACT Act and Azuma will be placed on the non-compliant list under 15 U.S.C § 376a(e)(1) and (e)(6), effective November 15, 2019.

**PROCEDURAL BACKGROUND**

In August 2018, California requested additional information from Azuma, which is a California-based federally licensed manufacturer of cigarettes, regarding State unlicensed wholesale distributions of cigarettes to unlicensed entities within California, providing at that time documentation related to the Prevent All Cigarette Trafficking (PACT) Act, 15 U.S.C § 375 *et. seq.*, registration information. Counsel for Azuma responded to California on September 14, 2018, contesting the applicability of the PACT Act to its business activities. California sent another warning letter in November, requesting registration and reporting under section 376 of

1

the PACT Act and confirmation that sales to unlicensed persons had ceased. On December 10, 2018, counsel for Azuma again responded, declining to substantively answer the demand until January 31, 2019. No further response was ever received.

After Azuma's second refusal to register and report, on December 18, 2018, California asked the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) that Azuma be added to the list of unregistered or noncompliant delivery sellers (the "noncompliant list") under the PACT Act. California informed ATF via letter that the Azuma should be added to the list of noncompliant delivery sellers maintained by ATF under 15 U.S.C. § 376a(e)(1)(D) for failing to register or make reports to the State tax administrator, in violation of 15 U.S.C. § 376(a)(2). That request identified physical addresses for Azuma taken from common carrier records of cigarette shipments that had not been reported to the State as required under section 376 of the PACT Act. On February 28, 2019, ATF sent letters via Federal Express notifying Azuma of the California nomination. Two letters were eventually delivered to Azuma. One was delivered to 920 B County Road 56, Alturas, California 96101 and the second letter was delivered to 901 County Road 56 Alturas, California 96101. The 901 County Road premises address was the premises address listed on a corrected U.S. Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau (TTB) manufacturer permit application dated February 13, 2019. Both letters were signed for by an Azuma employee. Azuma never responded to the ATF letter. On April 10, 2019, ATF added Azuma to the PACT Act non-compliant list.

On September 30, 2019, ATF was notified by Ben Fenner, legal counsel for Azuma, that Azuma did not receive the letters dated February 28, 2019. Mr. Fenner stated that Azuma's mailing address, as listed on its original and corrected permit and as provided to TTB in 2008 in its permit application, is P.O. Box 340, Alturas, California, 96101-0340. Azuma claimed it does not receive mail at the 920 B County Rd 56, Alturas, California premises address listed on the February 28, 2019 letter. Azuma acknowledged that its physical premises address was updated to 901 F County Road 56, Alturas, California, pursuant to a corrected TTB permit dated February 13, 2019. Mr. Fenner stated that Azuma's mailing address, as listed on its original and corrected permit and as provided to TTB in 2008 in its permit application, is P.O. Box 340, Alturas, California, 96101-0340, and Mr. Fenner directed all future correspondence to this mailing address.

Azuma requested that ATF remove Azuma from the list pending further review and notify each appropriate federal, state, tribal and local authority pursuant to 15 U.S.C. § 376a(E). California was notified of this request, and on October 3, 2019, California sent a letter via e-mail notifying ATF that it believed that Azuma had at least constructively received notice and that, pursuant to the requirements of the PACT Act, ATF certainly made a reasonable effort to notify Azuma that it was considering placing it on the non-compliant list. Therefore ATF did not need to remove Azuma from the non-compliant list while Azuma contested placement on the list.

Under 15 U.S.C. § 376a(e)(1)(E)(ii), ATF simply must make a "reasonable attempt to send notice to the delivery seller by letter, electronic means or other means that the delivery seller is being placed on the list." We agree with California that ATF, by delivering notice letters to Azuma's physical address listed on its TTB permit and to a second address, both of which were

signed for by an Azuma employee, certainly satisfied this criteria. Accordingly, we believe that ATF did not have to remove Azuma from the list pending any challenge by Azuma as to whether it is operating in violation of the PACT Act.

However, in order to avoid potential litigation regarding service and notice issues and in order to allow Azuma and ATF to focus on the merits of the issues raised by California, on October 3, 2019, ATF decided to remove Azuma from the non-compliant list, which was done when the next list was distributed on October 15, 2019. ATF notified Azuma that it had until November 1, 2019 to file a response as to why it should be not be placed on the non-compliant list. ATF also notified Azuma in its response not only to address California's original basis for placing Azuma on the non-compliant list in that Azuma has not registered with California as required under section 376 of the PACT Act or filed reports of shipments into California, but also to respond to more recent allegations that it has failed to comply with State laws applicable to the sale of cigarettes in California, in violation of 15 U.S.C. § 376a(a)(3), in that it was shipping untaxed, unstamped cigarettes to consumers (non-licensed persons) into places in California without complying with all applicable State, local and tribal laws relating to excise taxes, licensing and tax stamping requirements and other payment obligations or legal requirements relating to the sale, distribution, or delivery of cigarettes.

Azuma filed a response to ATF on November, 1, 2019 setting forth legal arguments indicating why it believed its operations are in compliance with State and Federal law. ATF forwarded the response to the State of California on November 1, 2019. California reviewed the response and on November 4, 2019, in a telephone call from Assistant Attorney General James Hart to ATF Associate Chief Counsel Jeffrey A. Cohen stated that Azuma should be placed on the non-compliant list.

## FACTUAL BACKGROUND

We have now reviewed all of the communications and materials forwarded to us by both Azuma and the State of California. Azuma manufactures Tracker cigarettes and, under a manufacturing contract agreement with Seneca Manufacturing of New York State, allegedly manufactures Heron cigarettes. Azuma pays Federal, but does not pay California State, taxes on these cigarettes, removes the cigarettes from bond, and ships these cigarettes to Native American reservation distributors, including shipments to the Big Sandy Rancheria Enterprises Inc. (Big Sandy), a Tribal corporation/tobacco distributor affiliated with the Big Sandy Band of Western Mono Indians located in Auberry, California. *See Big Sandy Rancheria Enter v. Beccera,* 2019 U.S. Dist. LEXIS 136741 at *7 (E.D. Cal 2019). Big Sandy purchases and distributes wholesale tobacco products exclusively from Azuma. *See Id.* at *11. Prior to this shipment, the cigarettes are in bond in the possession of Azuma as a federally licensed manufacturer and have not yet been shipped into a State for purposes of the PACT Act. The first shipment into State taxable commerce in California is usually a shipment from a Federally licensed bonded entity, such as manufacturer or importer, to a California licensed stamping agent/wholesaler, as the State does not tax cigarettes that are in the process of being manufactured by Federally licensed manufacturers and which have not been sold or shipped to a distributor or person within the State of California. *See Id.* at *2-4 (describing distribution process under California Revenue &

Taxation Code §§ 30001-30483 involving the distribution as well as the taxation of cigarettes in California at $2.87 a pack which is generally paid by licensed wholesale distributors).

Accordingly, under the PACT Act, Azuma is the first person shipping the cigarettes into California and into Indian Country of other Tribes and therefore must register with the Attorney General and California and file reports of this shipment with California pursuant to 15 U.S.C. § 376(a) (1) and (a) (2). Tracker cigarettes are not listed on the California cigarette directory and may not be lawfully sold in the State of California. Tracker Cigarettes also may not be lawfully sold in California because these cigarettes are not in compliance with California fire safety laws. Neither Azuma nor Big Sandy are licensed as distributors or stamping agents by the State of California. To our knowledge, no California tax stamps have been applied to these cigarettes, and no California taxes have been paid on these cigarettes. Possession or sales of more than 10,000 of these unstamped cigarettes in California by a non-licensee, including possession or sales on a Native American Reservation, would generally constitute a violation of the Contraband Cigarette Trafficking Act (CCTA), 18 U.S.C. § 2341 *et. seq. See United States v. Baker*, 63 F.3d 1478, 1484-86 (9th Cir. 1995); *United States v. Morrison*, 686 F.3d 94, 96 (2d Cir. 2012); *Ho-Chunk v. Sessions*, 253 F.Supp.2d 303, 305 (D.C. D.C 2017) *affirmed Ho Chunk v. Sessions*, 894 F.3d 365 (D.C. Cir. 2018) (CCTA applies to possession of unstamped cigarettes by Native Americans in violation of State law).

Azuma has forwarded documentation that it has now registered with California and ATF, and it appears from documents forwarded to us that Azuma has begun filing reports with California under 15 U.S.C. § 376(a) (2) solely the month of September 2019, and is temporarily in compliance with those sections of law, although Azuma should supplement the September filings by filing records of all of its shipments for the past four years. *See* 15 U.S.C. § 376 (c) (2) and (3) (records required under 15 U.S.C. § 376(a)(2) must be retained until the end of the fourth full calendar year following sales and these records must be made available to State and Federal officials for inspection). However, Azuma has shipped unstamped, non-directory cigarettes to consumers (non-licensed persons) in California in violation of multiple California laws listed at 15 U.S.C. § 376a (a) (3) (A), (B) and (D).

## ANALYSIS

The PACT Act, 15 U.S.C. § 375, *et seq.*, was passed by Congress as a response to the dramatic increase in illegal tobacco trafficking. The purpose of the PACT Act was to promote fair competition for law abiding tobacco distributors, raise tax revenues, and deprive criminal groups of a potential source of funds. The legislative findings to the PACT Act note that the sale of illegal cigarettes significantly reduces State tax revenue and that fair competition from the illegal sales of cigarettes was diverting billions of dollars of sales from law abiding retailers. *See* PACT Act Congressional Findings P.L. 111-154 § 1(b) (c), 124 Stat. 1087 (2010). One of the key provisions of the PACT Act required delivery (remote) sellers to comply with State tax and regulatory laws and required delivery sellers to file reports with the States. Significantly, the PACT Act established a "Non-Compliant List" wherein States, Native American Tribes and local governments could report companies that are failing to comply with the PACT Act to ATF. *See* 15 U.S.C. § 376a(e)(1) and (e)(6). ATF then notifies those companies regarding the allegations and allows the companies to respond to the allegations. If, after reviewing the

response, ATF believes the companies are in violation of the PACT Act, ATF places the companies on the non-compliant list. ATF regularly distributes the list to common carriers that are then prohibited from delivering products sold by companies on the list. 15 U.S.C. § 376a (e)(2).

Under the PACT Act, anyone who engages in a "delivery sale" of cigarettes and smokeless tobacco to a consumer into a State, locality or Indian Country is subject to extensive reporting requirements to these entities. They must supply information concerning the amount shipped, the person to whom the tobacco is shipped and the person making the shipment on behalf of the delivery seller. *See* 15 U.S.C. § 376(a)(2). This information assists these governmental entities in collecting taxes from the recipients of delivery sales. The term "delivery sale" is defined in the PACT Act as follows:

> Delivery sale. The term "delivery sale" means any sale of cigarettes or smokeless tobacco to a consumer if—
>
> (A) the consumer submits the order for the sale by means of a telephone or other method of voice transmission, the mails, or the Internet or other online service, or the seller is otherwise not in the physical presence of the buyer when the request for purchase or order is made; or
>
> (B) the cigarettes or smokeless tobacco are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery, or the seller is not in the physical presence of the buyer when the buyer obtains possession of the cigarettes or smokeless tobacco.

15 U.S.C. § 375(5).

The term delivery seller means any person who makes a delivery sale. 15 U.S.C. § 375(6).

The term "consumer" is defined as follows:

The term "consumer"—

> (A) means any person that purchases cigarettes or smokeless tobacco; and (B) does not include any person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco.

15 U.S.C. § 375(4).

A consumer under the PACT Act thus includes any person who makes a purchase of cigarettes or smokeless tobacco. Purchases by persons lawfully operating as manufacturers, distributors or retailers of cigarettes or smokeless tobacco are not sales to "consumers" under the PACT Act. Therefore, such sales are not delivery sales and would not be subject to the requirements set forth at 15 U.S.C. § 376a(a)(1)-(3). However, remote purchases by persons who are not lawfully operating as manufacturers, wholesalers or retailers of tobacco are considered purchases

by "consumers" under the PACT Act, and therefore, any person or entity making such sales is a delivery seller and must comply with the PACT Act's regulatory requirements. These requirements are straight forward and the language is unambiguous, therefore Indian canons of construction do not apply. *See Ho Chunk v. Sessions*, 2017 U.S. Dist. LEXIS 209297 at *2-3 (D.C. D.C. 2017) (Indian canons of construction do not apply when statute is unambiguous); *See also Red Earth LLC. v. United States*, 728 F. Supp. 2d 238, 254, 255 (W.D.N.Y 2010) *Affirmed* 657 F. 3d 138 (2d Cir. 2011) (The PACT Act will have a substantial effect on Native American businesses as majority of deliver sellers are Native American but a reasonable person can determine what is prohibited and what is permissible by consulting State and local laws which apply to delivery sellers under the PACT Act).

## AZUMA's SALES TO BIG SANDY ARE SALES IN CALIFORNIA

Azuma opined that State law does not apply to the cigarette shipments it sends into Indian reservations located in California and the terms State, Indian Country and by implication locality are mutually exclusive terms under the PACT Act. ATF disagrees. It is plainly evident that the under the PACT Act the terms State, locality and Indian Country are not mutually exclusive and that under the PACT Act shipments into these places must comply with all pertinent laws. New York City is a locality that taxes cigarettes. Obviously, the locality of New York City is also in the State of New York. Accordingly, anyone who ships cigarettes into New York City must comply with both State and local tobacco laws. *See City of New York v. Gordon*, 115 F. Supp. 3d 401, 416 (S.D.N. Y 2015) (under PACT Act Native American cigarette distributor must comply with New York City and New York State tax law). Initially, as Supreme Court precedent illustrates, an "Indian reservation is considered part of the territory of the State" in which it is located. *Nevada v. Hicks*, 533 U.S. 353, 361-62, (2001) (quotation marks omitted); *see also Organized Vill. of Kake v. Egan*, 369 U.S. 60, 72, (1962) ("[B]y 1880 the [Supreme] Court no longer viewed reservations ad [sic] distinct nations. On the contrary, it was said that a reservation was in many cases a part of the surrounding State or Territory, and subject to its jurisdiction except as forbidden by federal law.") (citation omitted); *Accord Ho-Chunk, Inc. v. Sessions*, 894 F.3d 365, 368 (D.C Cir. 2018); *New York v. Grand River Enters. Six Nations, Ltd.*, 2019 U.S. Dist. LEXIS 21558 at *14 (W.D.N.Y 2019) (under PACT Act shipment to an Indian Reservation is also a shipment into a State and terms are not mutually exclusive): *Accord State of New York v. Mountain Tobacco*, Case No. 17-3198 Slip. Op at 22-24 (2d Cir. 11/7/2019) (under PACT Act, shipment to an Indian Reservation is also a shipment into a State, terms are not mutually exclusive and shipment is in interstate commerce). Therefore these are shipments into both a State and Tribal land and are within the scope of the PACT Act. *See also Big Sandy Rancheria Enterprises v. Beccera,* 2019 U.S. Dist. LEXIS 136741 (E.D. Cal 2019) (State of California has jurisdiction to enforce licensing and complimentary statutes on Native American manufacturer/wholesaler and therefore Big Sandy Indian reservation is in the State of California). If a sale concludes on an Indian reservation in California that does not mean the sale is not in the State of California.

In *State ex rel. Edmondson v. Native Wholesale Supply,* 237 P.3d 199 (Okla. 2010), the Oklahoma Supreme Court rejected a similar argument. There, the defendant distributor asserted that its sales were to tribal wholesalers for sale to reservation Indians, and therefore were not in Oklahoma. The Oklahoma Supreme Court disagreed, concluding that "while the entity with

6

which [defendant distributor] directly deals may operate on tribal land that tribal land is not located in some parallel universe. It is geographically within the State of Oklahoma." *Id* at 208; *accord People ex rel. Harris v. Native Wholesale Supply Co.,* 196 Cal.App.4th 357, 364-65 (3d Dist. 2011).

### THE PACT ACT REQUIRES THAT MANUFACTURERS, DISTRIBUTORS, WHOLESALERS OR RETAILERS OF CIGARETTES COMPLY WITH FEDERAL, STATE, AND TRIBAL LAW IN ORDER TO BE "LAWFULLY OPERATING" WITHIN THE MEANING OF 15 U.S.C. § 375(4) (B)

An examination of the language of the PACT Act as a whole supports the conclusion that a manufacturer, distributor, wholesaler or retailer must comply with Federal, State and tribal law in order to be "lawfully operating" such that it may avoid the PACT Act's definition of "consumer." Compliance solely with Tribal law does not satisfy this criterial. As a result, sales to persons or entities in California that are not in compliance with California law and Federal law are presumptively delivery sales and must be reported.

The PACT Act demonstrates that the terms State and Tribal land and locality are not mutually exclusive terms and that distributors must comply with both State, Tribal and applicable local law. Pursuant to 15 U.S.C § 376(a)(2) and (3), memoranda or invoices of sale for all tobacco shipped into a State or Indian Country must be forwarded to State and Tribal Governments so that that pertinent State and Tribal taxes can be collected. Under 15 U.S.C. § 376a(3), all delivery sales into States (which include shipments into Indian reservations located within States) shall comply with all applicable State, local and Tribal laws. Pursuant to 15 U.S.C. § 376a(c)(3) all records required under the PACT Act are subject to inspection and should be made available to State, Federal and Tribal officials. Thus, when a delivery seller is shipping to a consumer, regardless of its location on an Indian Reservation, the delivery seller's records must be available for inspection by both State and tribal authorities to ensure compliance with all pertinent laws. Under 15 U.S.C. § 376(e)(1)(D), both State and Tribal officials can nominate delivery sellers who fail to comply with the PACT Act for placement on the non-compliant list.

We note that when a word or phrase such as "lawfully operating" is used but not defined within a statute, it is normally given its ordinary, common sense or natural meaning. *See Perrin v. United States,* 444 U.S. 37, 42 (1979). Distributors who are depriving California of tobacco taxes by distributing untaxed cigarettes to non-Tribal members in violation of California law; selling brands of cigarettes that are in violation of California complimentary statutes and California State safety laws; operating in violation of California State tax and regulatory statutes, and possessing and distributing untaxed and unstamped cigarettes in violation of the CCTA, those entities are not "lawfully operating" simply because they may possess the appropriate tribal license.

The term "lawfully operating," must also include an analysis as to whether an entity is operating lawfully under Federal law. Federal laws governing the distribution of tobacco have generally been held to apply to Native Americans. For instance, all manufacturers of cigarettes must be licensed by the Federal government and pay Federal taxes on cigarettes. *See* 26 U.S.C. §§ 5701, 5712-5713. This includes Native American manufacturers. *See King Mountain v. Tobacco, Tax*

7

*and Trade Bureau,* 923 F. Supp.2d 1280 (E.D. Wash. 2013); (King Mountain must comply with Federal law governing manufacture and taxation of cigarettes); *see also United States v. King Mountain Tobacco Company*, 2015 U.S. Dist. LEXIS 99832 (E.D. Wash 2015) (King Mountain must pay unpaid assessments mandated by Fair and Equitable Tobacco Reform Act); *see generally United States v. Baker*, 63 F.3d 1478, 1485-86 (the Contraband Cigarette Trafficking 18 U.S.C. § 2341 et. seq. (CCTA) , which criminalizes possession of unstamped, untaxed cigarettes, is a statute of general applicability which applies to Native Americans who can be prosecuted under the CCTA for possession and on reservation distribution of cigarettes in violation of State tax laws); *United States v. Gord*, 77 F.3d 1192, 1194 (9th Cir. 1996) (same).

In light of this precedent, Tribal retailers must also comply with applicable state and local tax and regulatory statutes and ATF can undertake an analysis as to whether a tribal business is complying with State law in considering whether a business is lawfully operating under the PACT Act.

## THE U.S. SUPREME COURT HAS REPEATEDLY HELD THAT STATES CAN IMPOSE CERTAIN REGULATIONS ON NATIVE AMERICANS PERTAINING TO TOBACCO SALES ON RESERVATIONS

The PACT Act does not expand State jurisdiction. The Supreme Court and other Courts have held for forty years that States can tax and regulate certain on Reservation sales of tobacco. As noted, the CCTA which requires that Native Americans distribute tobacco in accordance with State tax laws was passed in 1978. *See Ho-Chunk v. Sessions*, 253 F.Supp.2d 303, 305 (D.C. D.C 2017) *affirmed Ho Chunk v. Sessions*, 894 F.3d 365 (D.C. Cir. 2018) (CCTA applies to possession of unstamped cigarettes by Native Americans in violation of State law).The Supreme Court observed nearly forty years ago that facilitating tax avoidance is the economic foundation of many Indian tobacco businesses: "[T]he competitive advantage which the Indian seller doing business on tribal land enjoys over all other cigarette retailers, within and without the reservation, is dependent on the extent to which the non-Indian purchaser is willing to flout his legal obligation to pay the tax." *Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 482 (1976) (emphasis in original). In *Moe* and other decisions, the Court has held that despite their own personal exemptions from state excise taxes, a state can require "that the Indian tribal seller collect a tax validly imposed on non-Indians." *Id.* at 483.

A State's interest in ensuring the collection of taxes on cigarette sales to sales to non-Indians continues to outweigh a tribe's countervailing interests even when collection of an excise tax disadvantages or eliminates the Indian retailer's cigarette business with non-Indians. *Washington v. Confederated Tribes of Colville*, 447 U.S. 134, 151 (1980). As noted in *Big Sandy Rancheria Enterprises v. Beccera,* 2019 U.S. Dist. LEXIS 136741 at *43-44, wherein the Court upheld application of the minimally burdensome California licensing scheme and complimentary statutes on Big Sandy, the United States Supreme Court has repeatedly determined that "[s]tates have a valid interest in ensuring compliance with lawful taxes that might easily be evaded through purchases of tax exempt cigarettes on reservations; that interest outweighs tribes' modest interest in offering a tax exemption to customers who would ordinarily shop elsewhere." *Department of Taxation v. Milhelm Attea,* 512 U.S. 61, 64 (1994). Furthermore, tribes do not supplant a state's taxing or regulatory authority by collecting

8

tribal taxes on reservation cigarette sales and regulating their cigarette economies. *Washington v. Confederated Tribes of Colville*, 447 U.S. at *157-58*. In light of this balance of interests, the Supreme Court has determined that to enforce valid state taxation of on-reservation cigarette sales, states may impose "on reservation retailers minimal burdens reasonably tailored to the collection of valid taxes from non-Indians." *Department of Taxation and Finance v. Milhelm Attea,* 512 U.S. at 64. Moreover, Indians going beyond reservation boundaries have generally been subject to non-discriminatory State laws otherwise applicable to all citizens of the State... that principal is as relevant to a State's tax laws as it is to State criminal laws ". *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148-49 (1973). This includes when Indians are in the Indian Country of other Indians where they subject to State law. *Id; See Confederated Tribes v. Colville,* 447 U. S. at 161 (Tribes conducting off-reservation tobacco sales subject to State tax and stand on same footing as non- Indians); *Organized Vill. of Kake v. Egan*, 369 U.S.60, (1962) (Native community with no reservation lands in State was subject to State conservation regulations). *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 101, 110-11)(2005) (*Bracker* balancing issue test involves who and where taxes are being paid and is applicable only on specific Tribal Reservation and is inapplicable when Native Americans beyond reservation boundaries).

In light of this precedent, Tribal retailers must also comply with applicable state and local tax and regulatory statutes and ATF can undertake an analysis as to whether a tribal business is complying with State law in considering whether a business is lawfully operating under the PACT Act.

### AZUMA's CUSTOMERS ARE NOT LAWFULLY OPERATING UNDER CALIFORNIA LAW AND FEDERAL LAW

It appears that at least some of Azuma's customers, in particular, Big Sandy, who is not licensed by the State of California and is not compliant with State directory laws and safety laws, are not lawfully operating under applicable California and Federal laws and as such are consumers under the PACT Act. *See City of New York v. Hatu*, 2019 U.S. Dist. LEXIS 91576 at *46-47 (S.D.N.Y 2019) (distributors who are involved in a distribution scheme in violation of the law are not lawfully operating and are consumers under the PACT Act).

In 1998, the four largest cigarette manufacturers in the U.S. entered into an agreement with 46 States to make large payments to the States to defray the extraordinary heath care costs associated with cigarette use. *King Mountain v. McKenna*, 768 F.3d 989, 991 (9th Cir.2014) *cert. denied.* 135 S. Ct. 1542 (2015). Florida, Minnesota, Mississippi and Texas settled with the manufacturers prior to signing the Master Settlement Agreement (MSA). These cigarette manufacturers are known as Original Participating Members (OPM's). Other manufacturers can join the agreements as Subsequent Participating Members (SPM's). The MSA sets forth yearly baseline contributions for the OPMs based on market share. In order to ensure that there are funds to pay future health care costs States passed escrow statutes or "complimentary acts" requiring Non Participating Members (NPMS) to pay a fee to be put into escrow against future health claims by State residents. *King Mountain v. McKenna*, 768 F. 3d at 990.

The States' complimentary acts require that tobacco manufacturers certify that either the manufacturer is a signatory to the MSA or that State escrow payments have been paid. Additionally, States have cigarette directories which limit the distribution of cigarettes into the States to brands that are listed on the directory. In order to have the brand listed on the directory, the manufacturers must apply to the State. Manufacturers must establish that their brands are MSA compliant and that the products are in compliance with laws governing flame retardant paper and with laws governing State cigarette packaging warnings regarding youth smoking.

The Eastern District of California recently held that the sales by Big Sandy must be in compliance with State licensing and State complimentary statutes. *See Big Sandy Rancheria Enter v. Beccera*, 2019 U.S. Dist. LEXIS 136741 at *39 -40, 47-48 wherein the Court held that Big Sandy's sales "are *subject to non-discriminatory laws otherwise applicable to all citizens of the State...In sum, other State programs involving similar, but also more demanding, licensing, recordkeeping, requirements to that of California have been upheld by the Supreme Court... Plaintiff's attempt to retread old ground will not be permitted to proceed. The Court finds that plaintiff's challenge to the State's licensing requirements fails as a matter of law."* (Emphasis added). As such, Azuma's primary customer, Big Sandy, is not lawfully operating under California law and is a consumer under the PACT Act.

Other courts have held that Native American Manufacturers must contribute to State escrow funds. *King Mountain v. McKenna*, 768 F. 3d at 995-999. The courts have also unanimously rejected challenges by various Native American manufacturers and distributors who shipped cigarettes to Native American Distributors on Tribal land in violation of State complimentary statutes or other aspects of the MSA. *See e.g. State v. Maybee*, 148 Idaho 520, 224 P.3d 1109 (2010) (Idaho Supreme Court rejects constitutional and other challenges by Seneca cigarette distributor who shipped millions of cigarettes into Idaho in violation of Idaho complimentary statutes); *Accord State v. Native Wholesale Supply*, 2013 WL 4107633 (S. Ct. Idaho 8/15/2013). *See also Oklahoma v. Native Wholesale,* 2014 OK 49 (Ok. 2014) (Oklahoma Supreme Court holds that distributor of untaxed Native American brand of cigarettes in violation of MSA complimentary statutes must disgorge more than 47 million dollars of gross receipts noting that Native Wholesale purposefully targeted the Oklahoma market and reaped benefits of distributing untaxed cigarettes into Oklahoma and cannot evade public policy of laws enacted by Oklahoma and shift health care burden to the State). In light of this, the distribution and sale of cigarettes that are not permitted to be sold in a State may be a factor in considering whether a business entity is lawfully operating under the PACT Act.

The cigarettes that you distribute, Tracker cigarettes, are not on the California directory and may not be legally imported into, purchased, or sold in the state. Accordingly, your customers are not lawfully operating when they illegally distribute these cigarettes. *See* California Rev. & Tax Code §§ 30165.1, 30165.1(e) (2), (3); *see also People v. Huber*, DR110232 (Cal. Super. Ct. January 13, 2015) (permanently enjoining customer for, *inter alia*, sales of off-directory King Mountain product). The possession for sale of unstamped cigarettes by anyone other than a licensed distributor is illegal in California. Every person desiring to engage in the sale of cigarettes or tobacco products as a distributor... (must) file with the board an application, in such

10

form as the board may prescribe, for a distributor's license." Cal. Rev. & Tax. Code § 30140. The license is facility-specific and non-transferrable, and selling cigarettes without that license is unlawful. *See* Cal. Rev. & Tax. Code §§ 30148; 30149 ("Any person required to obtain a license as a distributor under this chapter who engages in business as a distributor without a license or after a license has been canceled, suspended, or revoked, and each officer of any corporation who engages in business, is guilty of a misdemeanor."). Other distributors, including those who plan to only make untaxed distributions, such as distributions to Native Americans for on reservation consumption by Tribal members, are also required to register with the board, identify the names and addresses of their agents and facilities, and provide any other information the board may require. Cal. Rev. & Tax. Code § 30151. Tracker is not registered with the California fire marshal as fire-standard compliant, and Tracker cigarettes have not been certified as fire safe under the California Cigarette Fire Safety and Firefighter Protection Act and may not, for that reason too, be legally sold in California. ATF has also received reports from California of multiple unlicensed, on-reservation sellers, including Big Sandy, selling unstamped, untaxed Tracker and Heron brand cigarettes to non-Indians in violation of California law.

We have received information that Azuma is selling more than 10,000 unstamped cigarettes to Big Sandy in California in violation of the Contraband Cigarette Act, 18 U.S.C. § 2342 (a) and that Big Sandy's receipt and possession of these cigarettes is in violation of the CCTA.

Accordingly, at least some of Azuma's customers such as Big Sandy are not lawfully operating under California law, and you have violated the PACT Act by making delivery sales to these consumers in violation of California law.

### AZUMA'S SALES IN CALIFORNIA ARE IN INTERSTATE COMMERCE FOR PURPOSES OF THE PACT ACT

The PACT Act defines interstate commerce as follows:

> (9) Interstate commerce
>
> (A) The term "interstate commerce" means commerce between a State and any place outside the State, commerce between a State and any Indian country in the State or commerce between points in the same State but through any place outside the State or through any Indian Country.

15 U.S.C. § 375.

This definition encompasses shipments from Azuma, a manufacturer into California commerce, regardless that the final destination in California may be located in Indian Country. This interpretation is supported by both the definition's language and the broader contexts of the purpose of the law and the overall statutory and taxation scheme for tobacco, which is a pervasively regulated commodity.

The argument that Azuma's transactions are "Nation-to-Nation" sales and thus not interstate commerce is incorrect. *New York v. Grand River Enters. Six Nations, Ltd.*, 2019 U.S. Dist.

11

LEXIS 21558 at *14 (W.D.N.Y 2019) *affirmed State of New York v. Mountain Tobacco*, Case No. 17-3198 Slip. Op at 22-24 (2d Cir. 11/7/2019) (under PACT Act, shipment to an Indian Reservation is also a shipment into a State, terms are not mutually exclusive and shipment is in interstate commerce). There is no indication in the PACT Act that Congress intended to exempt Tribal sales from the regulatory provisions governing delivery sales under the PACT Act. *Compare* 15 U.S.C. §§ 375-378 *with* 18 USC § 2343(b) (in amending CCTA in 2006, Congress specifically exempted Tribal Governments from reporting delivery sale requirements to United States Attorney General while Congress did not exempt Tribal sales under the PACT Act.) Finally, the Supreme Court has made it clear that whatever sovereign rights a Tribe may have in distributing untaxed cigarettes, those rights do not extend to members of other Native American Tribes and a Tribe shipping cigarettes to another reservation is on the same legal footing as a non-Native American. *Washington v. Confederated Tribes of Colville*, 447 U.S. at 161.

Azuma's September-reported shipments involved continued shipments to Big Sandy. Notably, the shortest common route between Alturas and Auberry where Big Sandy is located travels through Nevada north of Carson City. *See* Google Maps. *See also* 15 U.S.C. § 375(9) (A) ("The term 'interstate commerce' means ... commerce between points in the same State but through any place outside the State"). ("The term 'interstate commerce' means ... commerce between points in the same State but through any place outside the State").

Finally, you are in violation of 15 U.S.C. § 376a(3)(A), (B), and (D), the delivery sales section of the PACT Act. Unlike, 15 U.S.C. § 376(a) there is no requirement that these sales must be in interstate commerce. *See* 15 U.S.C. § 375(5) (definition of delivery sale does not use term interstate commerce, but references orders not placed in the presence of a person through telephone, internet, voice transmission or other means). *See City of New York v. Hatu*, 2019 U.S. Dist. LEXIS 91576 at *46-47 (No requirement of establishing interstate commerce necessary to establish delivery sales and intrastate transaction is a delivery sale).

## OTHER ARGUMENTS

You opined that ATF was required to issue regulations under the Administrative Procedure Act in order to enforce the PACT Act. While ATF briefly considered promulgating PACT Act interpretive regulations, an examination of the language of the PACT Act determined that the statute is self- executing and it is not necessary to issue regulations to enforce the PACT Act. *See* 15 U.S.C. § 375 *et seq.* (statutory language of PACT Act does not reference any requirement that Attorney General promulgate regulations to enforce PACT Act). *Compare with* 18 U.S.C. § 2343 (CCTA record keeping provisions include language that Attorney General should promulgate regulations to enforce this section of the CCTA). We also note that ATF's Tribal Consultation in 2015, was in reference to potential CCTA regulations not to promulgating regulations under the PACT Act. Furthermore, the PACT Act has been enforced by ATF and the States for close to a decade and no Court has held that it is necessary for ATF or the States to promulgate regulations. ATF has held since the passage of the PACT Act in 2010 that shipments from separate Native American Tribes are in interstate commerce under the PACT Act and Native American Distributors must comply with pertinent State laws. *See New York v. Mtn. Tobacco,* 2016 U.S. Dist. LEXIS 95329 at * 24 (E.D.N.Y. 2016) (in open letter to Indian Tribes shortly after passage of PACT Act ATF stated that transportation between two separate

reservations is in interstate commerce and ATF placed King Mountain, a Native American manufacturer on the non-compliant list for this conduct); *See generally Red Earth LLC. v. United States,* 728 F. Supp. 2d 238 (W.D.N.Y. 2010) (PACT Act applies to Native Americans). *See City of New York v. Gordon,* 1 F. Supp. 94, 101 (S.D.N.Y 2013) (City of New York can enforce PACT Act against Native American Distributor who shipped untaxed cigarettes into New York City in violation of State and City law); *City of New York v. Wolfpack Tobacco,* 2013 U.S. Dist. LEXIS 129103 at * 9-11 (S.D.N. Y 2013) (PACT Act provisions apply to Seneca Native American distributor shipping cigarettes in violation of various State and Federal laws).

## CONCLUSION

Based upon the record, we conclude that you have shipped cigarettes into the State of California that are untaxed, unstamped, unsafe, and not permitted by the California directory to unlicensed entities, all in violation of 15 U.S.C. § 376a(3)(A)(B) and (D).

Please notify us if there are changes in your operations which would place them in compliance with the PACT Act, if you cease shipping cigarettes to California, or if any other relevant actions will be taken to remedy the violations that have been documented. We note that you requested a meeting with ATF. If you would like to arrange a potential meeting, please contact ATF Associate Chief Counsel, Jeffrey. A .Cohen at 202-302-4885. We note that earlier this year, California placed another Native American manufacturer on the non-compliant list for similar PACT Act violations. That manufacturer entered into negotiations with the State of California and the company was subsequently removed from the non-compliant at the request of California. As noted, Azuma will be placed on the non-compliant list effective November 15, 2019.

Sincerely yours,

*Kevin C O'Keefe*
Kevin C. O'Keefe
Chief, Operational Intelligence Division

Attachments

**XAVIER BECERRA**
*Attorney General*

**State of California**
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 210-7806
Facsimile: (916) 323-2319
E-Mail: James.Hart@doj.ca.gov

December 19, 2018

David Marshall
PACT Act Coordinator
U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms & Explosives
Alcohol Tobacco Enforcement Branch
99 New York Avenue NE, Mailstop 7S 233
Washington, DC 20226

RE: PACT Act—Request for Listing of Azuma Corporation

Dear Mr. Marshall

Pursuant to 15 U.S.C. §§ 376a(e)(1)(D), (6)(A), California requests that the following person be added to the PACT Act list of unregistered or noncompliant delivery sellers:

Azuma Corporation
901 County Road 56
Alturas, CA 96101

(Alternate Address)
Azuma Corporation
920 B County Road 56
Alturas, CA 96101

Azuma Corporation holds a federal manufacturer's permit issued by the federal Alcohol and Tobacco Tax and Trade Bureau for its facility in Alturas, California. The company is not, however, registered with the California Department of Tax and Fee Administration (CDTFA) as a permitted manufacturer, importer, or distributor of cigarettes in the State of California. Nor has the company submitted its PACT Act registration or any of its required monthly reports or invoices to CDTFA. *See* 15 U.S.C. § 376(a)(2). Third party shipping records reveal shipments of cigarettes from Azuma Corporation to other locations within California, including elsewhere in California Indian country. *See*, *e.g.*, Exhibit A. The PACT Act defines such shipments as occurring in "interstate commerce" and deems them subject to the PACT Act. *See* 15 U.S.C. § 375(9); § 376(a).

December 19, 2018
Page 2

In August, following receipt of information of the unreported importation of Seneca Manufacturing-brand cigarettes into the State of California, our office contacted Azuma Corporation to request, among other things, that the company register and report its sales activities to the State under the PACT Act. *See* Exhibit B. The company responded on September 14, 2018, contending that "the transportation of cigarettes between two federally recognized Indian reservations does not involve 'interstate commerce' under the PACT Act" and declining to register or report its sales. *See* Exhibit C. In November, California renewed its demand that Azuma Corporation register and report its shipments under the PACT Act. *See* Exhibit D. The company did not do so, responding instead that it would not provide any substantive response until the end of January 2019. *See* Exhibit E. Based on our best available information, Azuma has been engaged in the manufacturing, distribution, and/or sale of cigarettes in violation of the PACT Act since at least April 2018. We therefore request that this person be added to the list of unregistered or noncompliant delivery sellers maintained by your office under 15 U.S.C. § 376a(e)(1) for the violation of 15 U.S.C. § 376a(e)(6)(A)(i)(II) (providing for addition of any seller that "has failed to register with or make reports to the respective tax administrator as required by this chapter").

                Sincerely,

                JAMES V. HART
                Deputy Attorney General

      For   XAVIER BECERRA
            Attorney General

JVH:

SA2010301908
33705306.docx