UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| State of California,<br><br>    Plaintiff,<br><br>  v.<br><br>Azuma Corporation, et al.,<br><br>    Defendants. | No. 2:23-cv-00743-KJM-DB<br><br>ORDER |

   Plaintiff the State of California moves to preliminarily enjoin defendants Phillip Del Rosa, Darren Rose and Wendy Del Rosa, in their official capacities as officers of the Alturas Indian Rancheria, from delivering cigarettes on behalf of defendant Azuma Corporation in violation of section 376a(e)(2) of the Prevent All Cigarette Trafficking (PACT Act).  For the reasons below, the court **grants** the motion in part.

## I.  BACKGROUND

   The State of California brings this action against defendants Azuma Corporation, Phillip Del Rosa, Darren Rose and Wendy Del Rosa for declaratory relief, injunctive relief and civil damages and penalties for "years of knowing and intentional trafficking of contraband cigarettes in the State."  Compl. ¶ 1, ECF No. 1.

   The State has enacted a complex regulatory regime for cigarette sales so "that financial burdens imposed on the state by cigarette smoking [are] borne by tobacco product manufacturers

1    rather than by the state." *Id.* ¶ 17 (quoting Cal. Health & Safety Code § 104555(d)).  To that end,

2    the State collects "consumer-paid taxes" from the distribution of cigarettes, as well as

3    "compensation" from cigarette manufacturers.  *Id.*

4         Under the tobacco Master Settlement Agreement (MSA),[1] California receives annual

5    payments from signatory manufacturers.  *Id.* ¶ 18.  Other cigarette manufacturers that have not

6    signed the MSA are required to escrow money against a potential future recovery by the State.

7    *Id.* ¶ 19.  Although these MSA payments and escrow fees differ, and neither applies to cigarettes

8    sold by a Native American tribe to tribal members on the tribe's land, the payments are uniformly

9    "assessed against manufacturers and collected months after the underlying distributions."

10   *Id.* ¶¶ 20–21.  To crack down on noncompliance, state laws require manufacturers to certify they

11   will meet their obligations, and in turn, the State certifies the manufacturer's cigarettes may be

12   sold to consumers in California.  *Id.* ¶ 22.  A manufacturer's failure to certify as required renders

13   its cigarettes unlawful for sale.  *Id.* ¶ 23.

14        Defendants are tribal officers of the Alturas Indian Rancheria, a federally recognized

15   Indian Tribe, and play key roles in Azuma, a tribal corporation that sells cigarettes in California

16   without complying with state taxation and tobacco regulations; the state thus describes the

17   cigarettes as "contraband."  *Id.* ¶¶ 8–11, 24.  Azuma is wholly owned by Alturas.  *Id.* ¶ 8.

18   Mr. Del Rosa, Mr. Rose and Ms. Del Rosa respectively are the chairperson, vice-chairperson, and

19   secretary-treasurer of the Alturas Tribe.  *Id.* ¶¶ 9–11.  Mr. Rose and Mr. Del Rosa hold the

20   majority of seats on Alturas's Business Committee, and therefore, "have authority to govern all

21   aspects of the Alturas Tribe and its subdivisions and arms," *id.* ¶ 65, including the Tribe's

22   enterprises, *id.* ¶ 64.  Mr. Rose is also "an officer and/or board member of Azuma."  *Id.* ¶ 10.

23   Azuma manufactures its own cigarettes.  *Id.* ¶ 47.  Azuma sells its cigarettes to retail cigarette

24   shops located on Indian land.  *Id.* ¶ 49.  Mr. Rose "exercises control over Azuma's operations"

25   and is listed as a contact for Azuma on copies of invoices of cigarette shipments to and from

---

[1] "The tobacco Master Settlement Agreement is a 'landmark agreement' reached in 1998 between cigarette manufacturers and 52 states and territories."  Compl. ¶ 18 n.1.

1    Azuma. *Id.* ¶ 66. Azuma's sales allegedly have contravened both federal and state cigarette laws.

2    An overview of those laws is needed to understand in full the State's allegations.

3          **A.**      **California's Cigarette Laws**

4          "Since 1959 California has imposed an excise tax on the distribution of cigarettes." *Big*

5    *Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 714 (9th Cir. 2021) (quoting *Cal. State Bd. of*

6    *Equalization v. Chemehuevi Indian Tribe*, 474 U.S. 9, 10 (1985)); *see also* Cigarette and Tobacco

7    Products Tax Law (Tax Law), Cal. Rev. & Tax. Code §§ 30001–30483. The Tax Law defines

8    distribution as including "[t]he sale of untaxed cigarettes or tobacco products in this state" and

9    "[t]he placing in this state of untaxed cigarettes . . . in retail stock for the purpose of selling the

10   cigarettes or tobacco products to consumers." Cal. Rev. & Tax. Code § 30008; *see also*

11   *id.* § 30011 (defining distributors). Anyone who sells cigarettes as a distributor must have a

12   distributor's license. *Id.* § 30140. Among other requirements, distributors must make monthly

13   reports regarding distribution of cigarettes and purchases of stamps and meter register units.

14   *Id.* § 30182. Distributors pay excise taxes by purchasing stamps or meter impressions, *id.*

15   § 30161, and by affixing stamps or meter impressions on cigarette packages prior to distribution,

16   *id.* § 30163. The Tax Law recognizes certain purchasers may not be obligated to pay the tax at

17   the time of sale and so requires distributors to collect the tax "at the time the purchaser becomes

18   so obligated[.]" *Id.* § 30108. Additionally, "California's scheme recognizes that the state may

19   not tax certain distributions," *Big Sandy Rancheria Enters.*, 1 F.4th at 715, such as "cigarettes . . .

20   sold by a Native American tribe to a member of that tribe on that tribe's land, or that are

21   otherwise exempt from state excise tax pursuant to federal law," Cal. Health & Safety Code

22   § 104556(j). For sales on Indian land, the Supreme Court has held the "legal incidence of

23   California's cigarette tax falls on the non-Indian consumers of cigarettes purchased from [a tribal]

24   smoke shop," and California "has the right to require" tribes to collect state cigarette taxes on

25   non-Indian consumers on California's behalf. *Cal. State Bd. of Equalization*, 474 U.S. at 12.

26         In 2003, California enacted the California Cigarette and Tobacco Products Licensing Act

27   of 2003 (Licensing Act) after finding "[t]ax revenues [had] declined by hundreds of millions of

28   dollars per year due, in part, to unlawful distributions and untaxed sales of cigarettes." Cal. Bus.

1    & Prof. Code § 22970.1(b).  Under the Licensing Act, manufacturers, importers, wholesalers,

2    distributors and retailers must obtain licenses, *see id.*, and may not sell or purchase cigarettes

3    from unlicensed entities, *id.* § 22980.1.  The Licensing Act defines a retailer as "a person who

4    engages in this state in the sale of cigarettes . . . directly to the public from a retail location."  *Id.*

5    § 22971(q).  A retailer may be a distributor if it sells untaxed cigarettes or places untaxed

6    cigarettes in retail stock for the purpose of selling cigarettes to consumers.  *See id.* § 22971(f)

7    (defining "distributor" as defined by the Tax Law); Cal. Rev. & Tax. Code §§ 30008, 30011

8    (defining "distribution" and "distributor").  A retailer must maintain a state license to engage in

9    the sale of cigarettes in California.  Cal. Bus. & Prof. Code § 22972.  Among other requirements,

10   applicants must pay an annual $265 fee per location to obtain a license.  *Id.* § 22973.  Retailers

11   must also retain purchase invoices.  *Id.* § 22974.

12          **B.      The Federal PACT Act**

13          Prompted in part by the reduction in Federal, State, and local government revenues

14   resulting from the sale of illegal cigarettes, Congress passed the Prevent All Cigarette Trafficking

15   Act of 2009 (PACT Act) in 2010 to prevent illicit cigarette trafficking and to ensure the collection

16   of federal, state and local excise taxes on cigarettes.  Pub. L. No. 111-154, § 1, 124 Stat. 1087,

17   1087–88 (2010).  Under the PACT Act, persons who sells cigarettes in interstate commerce must

18   file reports "with the Attorney General of the United States and with the tobacco tax

19   administrators of the State and place into which such shipment is made[.]"  15 U.S.C. § 376.  The

20   reports must include certain information such as a memorandum or invoice of the brand and

21   quantities of cigarettes shipped into a State.  *Id.*  Among other provisions, the Act also requires

22   "delivery sellers" to comply with "all State, local, tribal, and other laws generally applicable to

23   sales of cigarettes or smokeless tobacco as if the delivery sales occurred entirely within the

24   specific State and place," including state laws imposing excise taxes and licensing requirements.

25   *Id.* § 376a(a)(3).  The statute defines delivery sellers as persons who sell cigarettes to

26   "consumers."  *Id.* § 375(6).  The PACT Act uses the word "consumer" in a particular way.  It

27   "means any person that purchases cigarettes or smokeless tobacco," but it excludes "any person

1   lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless

2   tobacco." *Id.* § 375(4).

3       The Attorney General of the United States places anyone who does not comply with the

4   PACT Act on a list of non-compliant delivery sellers. *Id.* § 376a(e)(1). A State, local or tribal

5   government can identify or "nominate" noncomplying delivery sellers by submitting certain

6   information to the Attorney General. *See id.* § 376a(e)(1)(D). The federal Bureau of Alcohol,

7   Tobacco, Firearms and Explosives (ATF) maintains this non-compliant list, *see* Compl. ¶ 55, and

8   must distribute it to certain statutorily identified persons, including "the attorney general and tax

9   administrator of every State[,] persons that deliver small packages to consumers in interstate

10  commerce[, and] any other person that the Attorney General of the United States determines can

11  promote the effective enforcement of [the PACT Act.]" *Id.* § 376a(e)(1)(A). The PACT Act

12  prohibits any person who receives the non-compliant delivery sellers list and any person who

13  delivers cigarettes to consumers from "knowingly complet[ing], caus[ing] to be completed, or

14  complet[ing] its portion of a delivery of any package for any person whose name and address are

15  on the [non-compliant] list, unless" an exception applies. *Id.* § 376a(e)(2)(A). One exception is

16  if "the delivery is made to a person lawfully engaged in the business of manufacturing,

17  distributing, or selling cigarettes or smokeless tobacco[.]" *Id.* § 376a(e)(2)(A)(ii).

18      The PACT Act authorizes lawsuits to enforce its terms in some circumstances. A State,

19  local government, or Indian tribe "may bring an action in a United States district court to prevent

20  and restrain violations of this chapter by any person or to obtain any other appropriate relief from

21  any person for violations of this chapter, including civil penalties, money damages, and injunctive

22  or other equitable relief." *Id.* § 378(c)(1)(A). However, the Act does not abrogate or waive the

23  sovereign immunity of a State, local government, or Indian tribe. *Id.* § 378(c)(1)(B)).

24      **C.     Defendants' Non-Compliance with Federal and State Laws and this Lawsuit**

25      Since 2018, the State alleges Azuma has refused to comply with either the PACT Act or

26  the State's cigarette laws. Compl. ¶¶ 54, 71–73, 89–90. Azuma has instead created what the state

27  describes as "a vertically integrated contraband cigarette operation, encompassing manufacturing,

28  distribution, and retail." *Id.* ¶ 48. It both supplies its cigarettes to tribal retailers operating retail

1    shops on Indian land and through unlicensed distributors operating across California.  *Id.* ¶ 49.

2    The tribal retailers span the State, from Coachella in the south to Yreka in the north.  Dahlen

3    Decl. ¶ 8, ECF No. 13-4.  Several of these tribal retailers hold neither a California manufacturer,

4    importer, distributor or wholesale license as required by the Licensing Act, nor a distributor

5    license as required by the Tax Law.  *Id.* ¶¶ 9–10.  Because a license under the Tax Law is

6    required to collect and remit California cigarette taxes, as discussed above, these tribal retailers

7    also have not collected or remitted any California cigarette taxes.  *Id.* ¶ 11.

8         Moreover, Azuma does not file the reports required under the PACT Act, nor does it

9    comply with the state laws incorporated by the Act.  Compl. ¶ 54.  Azuma does not dispute the

10   State's allegation that neither it nor the tribal retailers, who are not parties to this case, comply

11   with applicable State laws and regulations.  *See id.* ¶¶ 54, 59.  Because Azuma had not complied

12   with the PACT Act, the California Attorney General's Office nominated Azuma to ATF's non-

13   compliant list and it was placed on the list on April 10, 2019.  *Id.* ¶ 55.  With a brief intermission

14   due to Azuma's claim that it had not received adequate notice,  Azuma has remained on the non-

15   compliant list since April 2019.  *Id.*

16        In the fall of 2022, the California Attorney General's Office sent Azuma a letter, in care of

17   Mr. Del Rosa and Mr. Rose, demanding the cessation of "unlawful cigarette distributions and

18   sales."  *Id.* ¶ 60.  But "Azuma continue[d] its unlawful activities."  *Id.* ¶ 61.  Mr. Rose and

19   Mr. Del Rosa have maintained "active participa[tion] in Azuma's contraband cigarette trafficking

20   activities," *id.* ¶ 62, and effectively control the Alturas Tribe's economic affairs, *id.* ¶¶ 65–66.  As

21   a result, six months later, the State brought this suit with the goal of ending defendants'

22   noncompliance with federal and state law.

23        California now moves for a preliminary injunction.  Mot., ECF No. 13; Mem., ECF No.

24   13-1.  It aims to stop Phillip Del Rosa, Darren Rose and Wendy Del Rosa from continuing to

25   violate section 376a(e)(2) of the PACT Act.  Mot. at 1.[2]  Defendants filed a lengthy opposition,

26   challenging the merits of the State's motion and the court's subject matter jurisdiction.  *See*

27   *generally* Opp'n, ECF No. 23.  The State has filed a reply.  Reply, ECF No. 28.

---

[2] When citing page numbers on filings, the court uses the pagination on the parties' briefs.

6

1    The court heard oral arguments on August 10, 2023.  Mins. Hr'g, ECF No. 32.  David

2  Goodwin and Peter Nascenzi appeared for the State.  *Id.*  Conly Schulte, John Peebles and

3  Gregory Narvaez appeared for defendants.  *Id.*  At the hearing, the court granted defendants'

4  motion for leave to file a supplemental brief addressing which party bears the burden of showing

5  whether the non-party tribal retailers are "lawfully engaged" in the cigarette business.  *Id.*; *see*

6  *also* ECF No. 31.  Defendants filed their supplemental opposition, Suppl. Opp'n, ECF No. 39,[3]

7  and California has responded, Suppl. Reply, ECF No. 40.

8  ## II.    SUBJECT MATTER JURISDICTION

9    Defendants contest this court's subject matter jurisdiction.  They argue tribal sovereign

10  immunity bars California's claims, Opp'n at 30–33, and otherwise contend the tribal retailers

11  must be joined under Rule 19, but cannot be joined due to sovereign immunity, *id.* at 25–29.

12  California disagrees.  Reply at 4–9.  In every case, the threshold question a federal court must

13  answer affirmatively is whether it has jurisdiction, so the court begins with these arguments.  Fed.

14  R. Civ. P. 12(h)(3).[4]

15  ### A.    *Ex parte Young*

16    California moves to enjoin three individuals in their official capacities as officers of

17  Alturas from violating the PACT Act.  Mem. at 1.  Although tribal sovereign immunity may

18  shield the Alturas Tribe from suit, *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085,

19  1091 (9th Cir. 2007) (citing *Kiowa Tribe of Okla. v. Mfg. Techs.*, 523 U.S. 751, 754 (1997)), it

20  "does not bar such a suit for injunctive relief against *individuals*, including tribal officers,

21  responsible for unlawful conduct," *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 796 (2014)

22  (emphasis in original).  This well-established judge-made exception to sovereign immunity is

---

[3] The court directed defendants to file a supplemental opposition within 14 days of the hearing.  Mins. Hr'g.  Although defendants filed the supplemental opposition a day late, the court finds the late filing did not prejudice California and will consider it on the merits.

[4] The court notes defendants appear to raise identical issues in their motion to dismiss, which is noticed for a hearing on October 13, 2023.  *See* Mem. Dismiss, ECF No. 24-1.  In light of the separately filed motion, the court does not construe defendants' arguments here as seeking to dismiss under Federal Rule of Civil Procedure 12(b)(1), but instead considers defendants' arguments in the context of defining whether the court has jurisdiction to grant the State's motion.

1    known as the *Ex parte Young* doctrine. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908). "This

2    doctrine has been extended to tribal officials sued in their official capacity such that tribal

3    sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly

4    acting in violation of federal law." *Burlington N.*, 509 F.3d at 1092 (internal marks and citation

5    omitted). Defendants argue, however, that *Ex parte Young* does not apply in the context of the

6    PACT Act. Opp'n at 31–33.

7          To be sure, *Ex parte Young* does not grant a limitless license to enjoin otherwise

8    immunized conduct by naming individuals instead of sovereign governments. In *Seminole Tribe*

9    *of Florida v. Florida*, the Supreme Court considered whether *Ex parte Young* should be available

10   when Congress had enacted "a detailed remedial scheme." 517 U.S. 44, 74 (1996). The relevant

11   statute, the Indian Gaming Regulatory Act (IGRA), provided a sequence of remedies:

12   - If a state does not negotiate in good faith for a gaming compact, then the only

13     remedy a party could obtain in federal court is an order to conclude a compact

14     within 60 days.

15   - If the parties disregard that order, then the court would only have jurisdiction to

16     order the parties to submit proposed compacts to a mediator, who selects the

17     compact most in accord with IGRA.

18   - Lastly, if the state refuses to accept the mediator's compact, then the court would

19     only have jurisdiction to direct the mediator to notify the Secretary of the Interior,

20     who in turn must prescribe regulations for gaming on the relevant tribal lands.

21   *Id.* at 74–75. In *Seminole Tribe*, the Court found that compared to this "modest" set of remedies,

22   an *Ex parte Young* action would offer "the full remedial powers of a federal court." *Id.* at 75.

23   Because Congress chose to impose liability "that is significantly more limited than would be the

24   liability imposed upon the state officer under *Ex parte Young*," the Court concluded Congress

25   must not have intended to permit suits invoking *Ex parte Young*. *Id.* at 76; *see also Moore v.*

26   *Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) ("Congress may enact statutes with a detailed

27   remedial scheme that explicitly or implicitly displaces the judge-made equitable remedy available

28   under *Ex parte Young*.").

1        The Supreme Court has since clarified that when a statutory scheme "places no restriction

2   on the relief a court can award," nor says "whom the suit is to be brought against," but instead

3   merely "authorize[s] federal courts" to review whether a challenged action complies with federal

4   law, it does not restrict potential liability under *Ex parte Young*. *Verizon Md., Inc. v. Pub. Serv.*

5   *Comm'n of Md.*, 535 U.S. 635, 647 (2002).  Relying on *Verizon Maryland*, the Ninth Circuit

6   rejected the argument that *Ex parte Young* actions are not permitted for violations of Title II of

7   the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act because

8   those laws contain no "limit" on the remedies available against states or public officials.  *Miranda*

9   *B. v. Kitzhaber*, 328 F.3d 1181, 1188 (9th Cir. 2003).

10        Here, defendants argue Congress intended to "foreclose" *Ex parte Young* actions for

11   violations of the PACT Act.  Opp'n at 31.  But like Title II of the ADA and Section 504 of the

12   Rehabilitation Act, the relevant PACT Act provisions place no limits on available remedies or

13   who may be sued.  Instead, the Act provides for a broad cause of action.  A State, local

14   government, or Indian tribe "may bring an action in a United States district court to prevent and

15   restrain violations of this chapter by any person or to obtain any other appropriate relief from any

16   person for violations of this chapter, including civil penalties, money damages, and injunctive or

17   other equitable relief."  15 U.S.C. § 378(c)(1)(A).  Attempting to dodge this language, defendants

18   point instead to a different provision, which specifies the chapter does not abrogate or waive the

19   sovereign immunity of a State, local government, or Indian tribe.  Opp'n at 32 (quoting 15 U.S.C.

20   § 378(c)(1)(B)).  But that provision expressly states the chapter also does not "restrict, expand, or

21   modify" the sovereign immunity of tribes.  15 U.S.C. § 378(c)(1)(B).  Contrary to defendants'

22   arguments, *see* Opp'n at 32–33, this provision does not show Congress intended to foreclose *Ex*

23   *parte Young* actions.  The provision does not modify available remedies or who may be sued.  In

24   fact, it does the opposite: it confirms pre-existing remedies and defenses are available.  If

25   Congress intended to change the default remedial scheme for unlawful conduct under the PACT

26   Act, which includes *Ex parte Young* actions, it would either have said so expressly or enacted a

27   detailed remedial scheme.  *See Verizon Md.*, 535 U.S. at 647.  It did neither.  The PACT Act thus

9

1   permits a suit for injunctive relief against individual tribal officers in their official capacities.

2   Tribal sovereign immunity does not bar California's *Ex parte Young* action.

3        **B.      Rule 19**

4        Defendants also claim the court lacks subject matter jurisdiction because the tribal

5   retailers have not been and cannot be joined to this action, even though the tribal retailers are

6   necessary parties under Federal Rule of Civil Procedure 19.[5]  Opp'n at 26.  California disagrees.

7   Reply at 4–7.

8        The first part of the Rule 19 analysis is whether "the absent party [is] necessary" for the

9   lawsuit to proceed.  *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th

10  Cir. 2012) (citing *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005)).  "A

11  party may be necessary under Rule 19(a) in three different ways."  *Id.*  "First, a person is

12  necessary if, in his absence, the court cannot accord complete relief among existing parties."  *Id.*

13  (citing Fed. R. Civ. P. 19(a)(1)(A)).  "Second, a person is necessary if he has an interest in the

14  action and resolving the action in his absence may as a practical matter impair or impede his

15  ability to protect that interest."  *Id.* (citing Fed. R. Civ. P. 19(a)(1)(B)(i)).  "Third, a person is

16  necessary if he has an interest in the action and resolving the action in his absence may leave an

17  existing party subject to inconsistent obligations because of that interest."  *Id.* (citing Fed. R. Civ.

18  P. 19(a)(1)(B)(ii)).  This inquiry is "fact-specific and practical."  *Jamul Action Comm. v.*

---

[5] In relevant part, Rule 19 provides:
> (a) Persons Required to Be Joined if Feasible.
> (1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest . . . .

Fed. R. Civ. P. 19(a).

1    *Chaudhuri*, 200 F. Supp. 3d 1042, 1048 (E.D. Cal. 2016).  Here, defendants bear the burden of

2    persuasion in arguing for dismissal based on Rule 19.  *Makah Indian Tribe v. Verity*, 910 F.2d

3    555, 558 (9th Cir. 1990).

4         First, defendants have not shown the court cannot award complete relief to the existing

5    parties without joining the tribal retailers.  The pending motion seeks to enjoin defendants; the

6    requested injunction would only prohibit defendants from distributing cigarettes.  As the State

7    admits, this injunction "would not prevent Azuma's customers from selling cigarettes or

8    purchasing cigarettes from other entities."  Reply at 5.  As a result, the only persons who would

9    be prohibited from specified conduct are parties to this lawsuit.  In short, the State seeks to enjoin

10   defendants from continuing to distribute cigarettes in violation of the PACT Act, and the court

11   can offer that relief.  Defendants have not shown the tribal retailers are necessary parties under

12   Rule 19(a)(1)(A).

13        Second, defendants have not shown the tribal retailers have a claimed interest in this

14   litigation such that the requested preliminary injunction would impair or impede their ability to

15   protect their interests.  Rule 19 specifies an absent party may be necessary if that party "claims an

16   interest relating to the subject of the action . . . ."  Fed. R. Civ. P. 19(a)(1)(B).  Focusing on the

17   verb "claim," some Ninth Circuit Panels have at times construed this language strictly: joinder is

18   "contingent . . . upon an initial requirement that the absent party *claim* a legally protected interest

19   relating to the subject matter of the action."  *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir.

20   1999) (emphasis in original) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d

21   1030, 1043 (9th Cir. 1983).  Under this reading, "the absent party must come forward and

22   affirmatively claim an interest in the subject of the litigation."  *Smith v. Martorello*, No. 18-1651,

23   2022 WL 1749875, at *4 (D. Or. Mar. 4, 2022); *see also Brum v. County of Merced*, No. 12-1636,

24   2013 WL 2404844, at *13 (E.D. Cal. May 31, 2013) (finding absent party not required under

25   Rule 19(a)(1)(B) because absent party did not seek to join action or file in support of required

26   joinder).  If this is the rule, then the tribal retailers are not necessary parties.  They have not come

27   forward and claimed an interest in this lawsuit.  There are no filings or declarations from the

28   tribal retailers.

But other Ninth Circuit panels appear to have construed Rule 19(a)(1)(B)'s language less strictly. Rather, they use a broader formulation: "the finding that a party is necessary to the action is predicated only on that party having a *claim* to an interest." *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (emphasis in original); *see also Salt River Project*, 672 F.3d at 1179. When courts take the broader approach, they look at whether the absent party has a "legally protected interest," which is more than "a financial stake" or "speculation about a future event," which would be "impaired or impeded" by the lawsuit. *Makah Indian Tribe*, 910 F.2d at 558. For example, in a common law action to set aside a contract, all parties to the contract are necessary, and if they cannot be joined, then they are indispensable. *Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 881 (9th Cir. 2004). This court applies the broader formulation. *See, e.g.*, *Jamul Action Comm.*, 200 F. Supp. 3d at 1049 (determining whether the absent party has a legally protected interest); *Rosales v. Dutschke*, 279 F. Supp. 3d 1084, 1092 (E.D. Cal. 2017) (same).

Defendants argue the tribal retailers have a legally protected interest in this lawsuit because the court must determine whether the tribal retailers are operating unlawfully. Opp'n at 26–27. This may be true in part. As the court explains more fully below in discussing likelihood of success, to ultimately show defendants violated section 376a(e)(2)(A) of the PACT Act, California will have to prove defendants either received the PACT Act noncompliant list or deliver cigarettes to consumers. 15 U.S.C. § 376a(e)(2)(A). As noted above, consumers are defined as "any person that purchases cigarettes or smokeless tobacco; and [] does not include any person lawfully operating" in the cigarette business. *Id.* § 375(4). If California cannot show defendants received the noncompliant list, then it will have to show defendants deliver cigarettes to consumers; meaning, California will have to show the tribal retailers are not lawfully operating and are "consumers" as that term of art is defined in the PACT Act. However, as explained below, once California meets its burden, the burden would shift to defendants to show the tribal retailers are in fact acting lawfully. If defendants do not ultimately prove the tribal retailers have acted lawfully, those tribal retailers could still prove they acted lawfully in a hypothetical future case regardless of their nonparticipation in this one. Their rights would remain intact in that

1    hypothetical future dispute.  Based on the current record, the court cannot conclude the tribal

2    retailers are necessary parties under Rule 19(a)(1)(B)(i).

3          Third, granting an injunction in the absence of the tribal retailers would not lead to

4    inconsistent judgments.  In a footnote, defendants argue the resolution of this lawsuit would lead

5    to inconsistent judgments if tribal retailers and Azuma later sue each other over abrogation of

6    their contracts, because the injunction would not bind the tribal retailers.  Opp'n at 28 n.11 (citing

7    Fed. R. Civ. P. 19(a)(1)(B)(ii)).  California does not request and this court will not issue an

8    injunction abrogating Azuma's contracts.  Defendants have put forward no reasons why Azuma

9    cannot both comply with the law and fulfill its contractual obligations, so the court finds no risk

10   of inconsistent judgments.  Thus, defendants have not shown the tribal retailers are necessary

11   parties under Rule 19(a)(1)(B)(ii).

12         Finally, even if the tribal retailers do have a legally protected interest in this litigation,

13   defendants do not address whether they are adequately represented in this action.  "An absent

14   party with an interest in the action is not a necessary party under Rule 19(a) 'if the absent party is

15   adequately represented in the suit.'"  *Salt River Project*, 672 F.3d at 1180 (quoting *Shermoen*,

16   982 F.2d at 1318).  The adequate-representation inquiry has three prongs: "(1) 'whether the

17   interests of a present party to the suit are such that it will undoubtedly make all of the absent

18   party's arguments'; (2) 'whether the party is capable of and willing to make such arguments'; and

19   (3) 'whether the absent party would offer any necessary element to the proceedings that the

20   present parties would neglect.'"  *Id.*  Here, it appears the interests of the tribal retailers are

21   adequately represented under this test: the interests of defendants and the tribal retailers are co-

22   extensive in that defendants will need to show the tribal retailers are acting lawfully in order for

23   defendants to avoid liability under section 376a(e)(2)(A)(ii) of the PACT Act, and defendants

24   have pointed to no aspect of the case the present parties would neglect.

25         In sum, defendants have not met their burden of showing the tribal retailers are necessary

26   parties under Rule 19.  The court need not consider further whether this action may proceed in

27   their absence if they cannot be joined.

1  **III.   PRELIMINARY INJUNCTION**

2      **A.    Legal Standard**

3      "An injunction is 'an extraordinary remedy that may only be awarded upon a clear

4  showing that the plaintiff is entitled to such relief.'" *City of S.F. v. U.S. Citizenship & Immigr.*

5  *Servs.*, 944 F.3d 773, 789 (9th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*,

6  555 U.S. 7, 22 (2008).  Therefore, a plaintiff seeking a preliminary injunction must establish by a

7  clear showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable

8  harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an

9  injunction is in the public interest." *Winter*, 555 U.S. at 20, 22.  Alternatively, "'serious questions

10 going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support

11 issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood

12 of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v.*

13 *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

14     The purpose of a preliminary injunction is to "preserve the status quo and the rights of the

15 parties until a final judgment [is] issue[d]." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091,

16 1094 (9th Cir. 2010).  The status quo is "the last, uncontested status which preceded the pending

17 controversy." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878

18 (9th Cir. 2009) (quoting *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 514 (9th

19 Cir. 1984)).  There are two forms of preliminary injunctions: 1) a prohibitory injunction which

20 "prohibits a party from taking action and preserves the status quo pending a determination of the

21 action on the merits," *id.* at 878 (internal marks and citation omitted); and 2) a mandatory

22 injunction, which "orders a responsible party to take action," *id.* (internal marks and citation

23 omitted).  Mandatory injunctions go beyond maintaining a status quo and are "particularly

24 disfavored." *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)).  To

25 obtain a mandatory injunction, a plaintiff must show "extreme or very serious damage" will occur

26 unless the requested injunction is granted. *Id.*  Such affirmative pretrial relief is not appropriate

27 in "doubtful" cases. *Id.*

1    At the outset, the court notes the parties appear to disagree about whether the State seeks a

2    mandatory or prohibitory injunction.  Defendants argue California is seeking a mandatory

3    injunction because the injunction would alter the status quo that has been maintained for

4    approximately five years—the continuation of Azuma's cigarette business while the state sought

5    its compliance.  Opp'n at 33.  In contrast, California's summary of the applicable law implies it

6    seeks a prohibitory injunction.  Mem. at 8.

7    "[T]he status quo is not simply any situation before the filing of the lawsuit, but rather the

8    last uncontested status that preceded the parties' controversy."  *Dep't of Parks & Rec. for State of*

9    *Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).  Defendants argue the

10   applicable status quo is the circumstances that existed before the pending lawsuit.  Opp'n at 33.

11   However, California has contested the lawfulness of Azuma's business since 2018, when Azuma

12   first started its operation, and defendants' noncompliance with state laws gave rise to California's

13   claims.  *See* Mem. at 6.  Viewing the chronology correctly, the last uncontested status is before

14   Azuma began its allegedly illicit cigarette business.  *Cf. GoTo.com, Inc. v. Walt Disney Co.*,

15   202 F.3d 1199, 1210 (9th Cir. 2000) ("In this case, the status quo ante litem existed before

16   [defendant] began using its allegedly infringing logo.").  California is seeking a prohibitory

17   injunction enjoining defendants from further violations of the PACT Act.

18          **B.      Likelihood of Success on the Merits**

19   To show a likelihood of success on the merits, California "must show that there is a

20   'substantial case for relief on the merits.'"  *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012)

21   (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011)); *see also City of S.F.*,

22   944 F.3d at 789 ("The first prong in both tests [for a granting of preliminary injunction and a

23   stay]—likelihood of success on the merits—is the same.").  However, California does not need to

24   show "it is more likely than not that [it] will win on the merits."  *Leiva-Perez*, 640 F.3d at 966.

25   California argues it will succeed on the merits of its claim because defendants are

26   violating section 376a(e)(2)(A) of the PACT Act.  Under section 376a(e)(2)(A), no person who

27   receives a list of unregistered or non-compliant delivery sellers and "no person who delivers

28   cigarettes [] to consumers, shall knowingly complete, cause to be completed, or complete its

1   portion of a delivery of any package for any person whose name and address are on the [non-

2   compliant] list[.]" 15 U.S.C. § 376a(e)(2)(A).  One statutory exception is if "the delivery is made

3   to a person lawfully engaged in the business of manufacturing, distributing, or selling cigarettes

4   or smokeless tobacco[.]"  *Id.*

5          Where "a statutory prohibition is broad and an exception is narrow, it is more probable

6   that the exception is an affirmative defense."  *United States v. Carey*, 929 F.3d 1092, 1103 (9th

7   Cir. 2019) (internal marks and citation omitted).  In *Carey*, the statute in question prohibited

8   BASE jumping[6] and stated the following activities were prohibited: "[d]elivering or retrieving a

9   person or object by parachute, helicopter, or other airborne means, except in emergencies

10  involving public safety or serious property loss, or pursuant to the terms and conditions of a

11  permit."  *Id.* at 1096 (quoting 36 C.F.R. § 2.17(a)(3)).  In *Carey*, the defendant argued the

12  government did not satisfy its burden of proof because it did not prove he lacked a permit.  *Id.*

13  The Ninth Circuit found the permit exception was best understood as an affirmative defense and

14  not an element of the offense because the prohibition against BASE jumping was broad and the

15  exception represented a "narrow band of cases."  *Id.* at 1103.  Thus, the court held the exception

16  was an "escape hatch" the defendant had the burden to establish.  *Id.* at 1101.

17         Similarly, section 376a includes a broad prohibition against delivery of cigarettes for

18  persons on the PACT Act non-compliant list.  *See* 15 U.S.C. § 376a(e)(2)(A) (titled "Prohibition

19  on delivery").  The broad prohibition includes three narrow exceptions, including deliveries made

20  to persons "lawfully engaged" in the cigarette business.  *Id.*  As in *Carey*, the exception here is

21  best understood as an affirmative defense and the burden is on defendants to show the exception

22  applies to them.  Therefore, if California carries its burden of showing a likelihood of success on

23  the merits, the burden then shifts to defendants "to show a likelihood that its affirmative defense

24  will succeed."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007); *see*

---

[6] "[T]he acronym in BASE jumping refers to the structures off of which enthusiasts of the extreme sport jump with the use of a chute[.]"  *Carey*, 929 F.3d at 1095 n.2 (quoting *United States v. Albers*, 226 F.3d 989, 991 (9th Cir. 2000)).

1  *also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)

2  ("[T]he burdens at the preliminary injunction stage track the burdens at trial.").

3      In their supplemental opposition, defendants argue it is California, not defendants, that

4  bear the burden of proving the tribal retailers are not lawfully engaged in the tobacco business.

5  Suppl. Opp'n at 8–10.  They argue under section 376a(e)(2)(A), California must show defendants

6  deliver cigarettes to consumers, which is defined as "any person that purchases cigarettes or

7  smokeless tobacco; and [] does not include any person lawfully operating" in the cigarette

8  business.  15 U.S.C. § 375(4).  Defendants argue California's interpretation would render the

9  section internally inconsistent because under that interpretation, the State would first have the

10  burden to show the tribal retailers are not lawfully operating and then the burden would shift to

11  defendants to show the tribal retailers were in fact operating lawfully—thus the parties "would

12  bear the burden to prove the opposite side of the same issue."  Suppl. Opp'n at 10.

13      The court agrees with defendants in part.  Under section 376a(e)(2)(A), California does

14  have the initial burden of showing defendants are within the scope of the prohibition and engaged

15  in the prohibited activity.  That is, the statute prohibits two groups of persons from knowingly

16  completing, causing to be completed, or completing their respective portions of a delivery of

17  cigarettes for any person on the noncompliant list—persons who received the noncompliant list

18  and persons who deliver cigarettes to "consumers."  Contrary to California's argument, under the

19  plain language of the statute, it is not "anyone" who is prohibited from delivering cigarettes on

20  behalf of a listed entity.  *See* Mem. at 7, Reply at 2, Suppl. Reply at 5; *see also ASARCO, LLC v.*

21  *Celanese Chem. Co.*, 792 F.3d 1203, 1210 (9th Cir. 2015) (courts first look to the "plain

22  language" when interpreting statutes).  California must first show the statute applies to

23  defendants.  If California meets its initial burden, the burden shifts to defendants to show the

24  tribal retailers are in fact operating lawfully, either because they are complying with applicable

25  state laws, or because the state laws do not apply to them.  There is nothing internally inconsistent

26  in interpreting the statute to include this burden-shifting mechanism.

27      Applying the applicable burdens as laid out above, the court finds California has made out

28  a substantial case for relief on the merits as to its claim against Mr. Rose, but not as to Mr. and

1   Ms. Del Rosa.  California does not argue or show Alturas or its officers have received the

2   noncompliant list.  *See generally* Compl.; Mot.; Reply; *see also* 15 U.S.C. 376a(e)(1) (directing

3   the Attorney General of the United States to distribute the list to specified persons).[7]  Nor does

4   California argue or show either that Alturas delivers or Mr. Del Rosa or Ms. Del Rosa deliver

5   cigarettes to consumers.  *See generally id*.  California has not developed or fully supported its

6   arguments regarding these two defendants and therefore California has not shown it is likely to

7   succeed on the merits of this specific PACT Act claim against Mr. and Ms. Del Rosa.[8]  On this

8   record, the court cannot enjoin these officers under the PACT Act.

9          However, California has shown both Azuma and Mr. Rose deliver cigarettes to

10  "consumers."[9]  *See* Invoices, Compl. Ex. N, ECF No. 1-14; Cal. Att'y Gen. Warning Letter,

11  Compl. Ex. M, ECF No. 1-13; Letter to Mr. Rose, Nascenzi Decl. Ex. A, ECF No. 13-5.  Mr.

12  Rose is both a vice-chairperson of Alturas and is an officer of Azuma.  Compl. ¶ 10; *see also*

13  Rose Decl. ¶¶ 2–3, ECF No. 23-3 (declaring he is Vice Chairperson of Alturas's Business

14  Committee, a governing body of the Alturas Tribe, and President/Secretary of Azuma).  Azuma

---

[7] It may very well be that Alturas and its tribal officers have received the noncompliant list.  Under section 376a(e)(1), the Attorney General of the United States must compile a list of noncompliant delivery sellers and distribute the list to "any []person that the Attorney General of the United States determines can promote the effective enforcement of this chapter; and publicize and make the list available to any other person engaged in the business of interstate deliveries or who delivers cigarettes . . . in or into any State."  15 U.S.C. § 376a(e)(1)(A).  The statute also directs the Attorney General to "distribute the list to the attorney general or chief law enforcement official and the tax administrator of any government [including Indian tribal government] submitting any such information [about noncomplying delivery sellers.]"  *Id.* 376a(e)(1)(D).  However, California has not alleged and does not provide any evidence indicating Alturas and its tribal officers have received the list.

[8] Although the parties do not raise this issue, the court notes California has not connected Wendy Del Rosa with any unlawful conduct.  *See generally* Compl.; *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 994 (9th Cir. 2020) ("For *Ex parte Young* to apply, a plaintiff must point to threatened or ongoing unlawful conduct by a particular governmental officer.  The doctrine does not allow a plaintiff to circumvent sovereign immunity by naming some arbitrarily chosen governmental officer or an officer with only general responsibility for governmental policy.").

[9] The PACT Act directs the Attorney General of the United States to distribute the list of noncompliant delivery sellers to those identified as such.  Because Azuma has been identified as a noncompliant delivery seller, Azuma and Mr. Rose may have received the noncompliant list.  *See* 15 U.S.C. § 376a(e)(1)(D).  However, California does not make this argument.  Defendants do not argue they have not received the list.  *See* Suppl. Opp'n at 3 n.3.

18

and Mr. Rose make deliveries to Azuma's customers, who do not have licenses as required by the Licensing Act or the Tax Law. *See* Cal. Att'y Gen. Warning Letter; Dahlen Decl. ¶ 8. Because Azuma's customers do not have licenses and do not remit applicable taxes to California, they are not lawfully operating and are therefore, consumers as defined by the PACT Act. *See City of N.Y. v. Hatu*, No. 18-848, 2019 WL 2325902, at *15 (S.D.N.Y. May 31, 2019); *New York v. Grand River Enters. Six Nations, Ltd.*, No. 14-910A, 2020 WL 12969527, at *11 (W.D.N.Y. Dec. 15, 2020). California also has shown Azuma is on the list of non-compliant delivery sellers. ATF Letter, Compl. Ex. J, ECF No. 1-10; Alexander Decl. ¶¶ 6, 9, 11 ECF No. 13-3; *see* Opp'n at 24. As noted earlier, delivery sellers are defined as persons who sell to consumers. 15 U.S.C. § 375(6). Mr. Rose has knowingly caused to be completed or has completed deliveries of cigarettes for Azuma, despite receiving notices from California and ATF about Azuma's placement on the noncompliant list. *See* Mem. at 12–13; *see, e.g.*, Invoices; Dahlen Decl. Ex. A, ECF No. 13-4; Cal. Att'y Gen. Warning Letter. California has shown it is likely to succeed on the merits of its PACT Act claim against Mr. Rose, i.e., that Darren Rose, in his official capacity as an officer of the Alturas Tribe violated section 376(a)(e)(2)(A) by delivering or causing the delivery of cigarettes on behalf of Azuma despite knowing Azuma was listed on the non-compliant list.[10] Whether Mr. Rose acted solely in his official capacity as Vice-Chairperson and a member of the Business Committee, or solely in his capacity as President of Azuma, or both, the court finds the State has demonstrated its entitlement to relief with respect to its section 376a(e)(2)(A) claim against Mr. Rose.

The burden thus shifts to Mr. Rose to show a statutory exception applies to him. As discussed above, defendants sell cigarettes to tribal retailers operating within Indian Country. Mr. Rose argues the tribal retailers are licensed and regulated by the laws of their respective tribes, Opp'n at 11, and thereby claims California cannot show the tribal retailers are not lawfully engaged in the cigarette business, *id.* at 12. He argues the tribal retailers do not need to comply with California's licensing and tax laws to lawfully operate within the jurisdictions of their

---

[10] Although California has shown Azuma is delivering cigarettes for itself, California has not moved to preliminarily enjoin Azuma. *See* Mot. at 1.

19

1    respective tribes.  *See id.* at 13–24.  In addition, even if California law did apply to the tribal

2    retailers, Mr. Rose argues California law does not pass the balancing test described in *White*

3    *Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980).[11]  *Id.*

4         For the relevant statutory exception to apply, Mr. Rose must show the Tribal retailers are

5    "lawfully engaged" in the cigarette business.  15 U.S.C. § 376a(e)(2)(A)(ii).  The PACT Act does

6    not define "lawfully engaged."  *See id.* § 375 (definitions).  "When a statute does not define a

7    term, we typically give the phrase its ordinary meaning."  *Animal Legal Def. Fund v. U.S. Dep't*

8    *of Agric.*, 933 F.3d 1088, 1093 (9th Cir. 2019) (internal marks and citation omitted).  "Black's

9    Law Dictionary defines 'lawful' as '[n]ot contrary to law[.]'"  *United States v. Osuna-Alvarez*,

10   788 F.3d 1183, 1185 (9th Cir. 2015) (quoting Black's Law Dictionary 152 & 965 (9th ed. 2009)).

11   Mr. Rose must thus show the Tribal retailers are engaged in the cigarette business in a way that is

12   not contrary to law.  He can meet his burden in two ways: 1) he can show the tribal retailers do

13   not need to comply with state law or 2) he can show the tribal retailers are in fact already

14   complying.

15        First, Mr. Rose argues California's laws are preempted by federal law, and therefore, do

16   not apply to the tribal retailers.  The court is unpersuaded by this argument.  State law is

17   "generally inapplicable" when regulating "on-reservation conduct involving only Indians."

18   *Bracker*, 448 U.S. at 144.  However, the Supreme Court has made clear "the States have a valid

19   interest in ensuring compliance with lawful taxes that might easily be evaded through purchases

20   of tax-exempt cigarettes on reservations," and it has held "that interest outweighs tribes' modest

21   interest in offering a tax exemption to customers who would ordinarily shop elsewhere."  *Dep't of*

22   *Tax'n & Fin. of N.Y. v. Milhelm Attea & Bros.*, 512 U.S. 61, 73 (1994).  Thus, California "may

23   impose on reservation retailers minimal burdens reasonably tailored to the collection of valid

24   taxes from non-Indians."  *Id.*  This includes collecting valid taxes from non-Indians as well as

---

[11] The *Bracker* balancing test applies where "a State asserts authority over the conduct of non-Indians engaging in activity on the reservation," and is "an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." *Bracker*, 448 U.S. at 144–45.  The test calls for "a particularized inquiry into the nature of the state, federal, and tribal interests at stake[.]" *Id.* at 145.

1    Indians who are not members of the same tribe.  *See Washington v. Confederated Tribes of*

2    *Colville Indian Rsrv.*, 447 U.S. 134, 161 (1980).

3          Second, Mr. Rose argues even if California's regulations were to apply to the tribal

4    retailers, they impose more than a minimal burden and are therefore invalid.  As the party with

5    the burden of showing a statutory exception applies and as the party challenging the state

6    regulations underlying the PACT Act claim, it is defendant, not California, who has the burden of

7    showing the challenged regulations are invalid.  *See id.* at 160 ("The Tribes, and not the State

8    . . . , bear the burden of showing that the recordkeeping requirements which they are challenging

9    are invalid.").  As explained below, Mr. Rose has not met his burden.

10         Under the Tax Act, distributors must have a distributor's license to sell cigarettes.  Cal.

11   Rev. & Tax. Code § 30140.  Similarly, under the Licensing Act, distributors and retailers must

12   maintain a state license to engage in the sale of cigarettes.  Cal. Bus. & Prof. Code §§ 22972

13   (license for retailers), 22975 (license for distributors).  Here, the tribal retailers receive untaxed,

14   unstamped cigarettes from Azuma and sell those untaxed cigarettes; this much is undisputed.  *See*

15   Mem. at 9–10; Opp'n at 16.  Accordingly, the tribal retailers are distributors under the Tax Act.

16   *See* Cal. Rev. & Tax. Code § 30008 (defining distribution as the sale of untaxed cigarettes or

17   placing untaxed cigarettes in retail stock for the purpose of selling cigarettes to consumers),

18   § 30011 (defining distributors as persons who distribute cigarettes).  They are also retailers under

19   the Licensing Act because they sell cigarettes directly to the public from a retail location.  *See*

20   Cal. Bus. & Prof. Code § 22971(q).  However, the tribal retailers do not have a state license under

21   either the Licensing Act or the Tax Law, both of which are required under state law.  Dahlen

22   Decl. ¶ 8.  They also do not collect or remit any California cigarette taxes.  *Id.* ¶ 11.  Putting aside

23   whether the Licensing Law applies to tribal retailers, *see* Cal. Bus. & Prof. Code § 22971.4

24   (Licensing Act does not apply to persons exempt under Federal Law); Opp'n at 16–18 (arguing

25   the Licensing Act does not apply to tribal retailers), California's Tax Law does apply to the tribal

26   retailers.  Defendant's arguments to the contrary are unpersuasive.  *See* Opp'n at 13–18.  Both the

27   Supreme Court and the Ninth Circuit have upheld the Tax Law, *Cal. State Bd. of Equalization*,

28   474 U.S. at 12; *see also Big Sandy Rancheria Enters.*, 1 F.4th at 731, and the Supreme Court has

21

1    held tribal shops can be required to collect taxes on California's behalf, *Cal. State Bd. of*

2    *Equalization*, 474 U.S. at 12.

3          Mr. Rose has not shown the tribal retailers are exempt from California's Tax Law.  He

4    does not claim or show the tribal retailers owe no California taxes because all their customers are

5    members of their respective tribes.  Mr. Rose does not claim the tribal retailers have collected,

6    paid or remitted state taxes that are owed.  *Compare* Dahlen Decl. ¶ 11 (declaring Azuma's

7    customers "have not collected or remitted any California cigarette taxes") *with* Opp'n at 18

8    (arguing California has failed to show any taxes are owed by the tribal retailers).  He also has not

9    shown the tribal retailers do in fact have a license or have otherwise complied with the licensing,

10   recordkeeping and reporting requirements under the Tax Law.  *Cf.* Dahlen Decl. ¶¶ 8–11

11   (declaring Azuma's customers do not have a license).  Therefore, Mr. Rose has not met his

12   burden of showing he delivered or caused to be delivered packages of cigarettes only to persons

13   "lawfully engaged" in the cigarette business.

14         California has shown it is likely to succeed on the merits of its PACT Act claim under

15   section 376a(e)(2)(A) against defendant Darren Rose, but not against defendants Phillip Del Rosa

16   and Wendy Del Rosa.

17         **C.      Irreparable Injury**

18         "Although in the ordinary case a showing of irreparable harm is required to obtain

19   injunctive relief, no such showing is required when injunctive relief is sought in conjunction with

20   a statutory enforcement action where the applicable statute authorizes injunctive relief." *Fed.*

21   *Trade Comm'n v. Consumer Def., LLC*, 926 F.3d 1208, 1214 (9th Cir. 2019).  Here, the PACT

22   Act authorizes a state to seek injunctive relief through its attorney general.  15 U.S.C.

23   § 378(c)(1)(A).  California need not show irreparable injury.  *See Fed. Trade Comm'n*, 926 F.3d

24   at 1214 (district court did not err in granting a motion for preliminary injunction without requiring

25   the plaintiff to show irreparable injury).

### D.      Balance of Hardships and Public Interest

"When the government is a party, the last two factors merge."  *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).  Because California is a party, the court considers the balance of hardships and the public interest together.  *See id.* at 581.

The court first considers the harm Mr. Rose will face if he is enjoined from delivering cigarettes on behalf of Azuma to anyone in California.  Mr. Rose argues the injunction would "shut down [Azuma's] business" and would negatively impact the Tribe.  Opp'n at 36.  The revenues from Azuma's cigarette sales fund economic development ventures operated by the Tribe, and in turn, support tribal members and employees of the Tribe's businesses.  *Id.*; *see also* Del Rosa Decl. ¶ 8, ECF No. 23-2.  The Tribe has invested millions of dollars into Azuma's tobacco manufacturing business, Rose Decl. ¶ 9; Del Rosa Decl. ¶ 9, and an injunction would effectively shut down Azuma's operations and render Azuma insolvent, Rose Decl. ¶ 17.  However, the injunction would not prohibit Mr. Rose from lawfully engaging in the cigarette business in compliance with state and federal law.  The harm he would face is the net revenue loss from paying applicable taxes to California and otherwise complying with state law.

On the other hand, the harm to the public is great.  Without an injunction, defendant's continued noncompliance with California's laws and the PACT Act will deprive California of its excise taxes and undercut the public policy and public health goals of both federal and state law.  Mem. at 14.  The prevention of illicit cigarette trafficking and collection of state taxes are some of the goals of the PACT Act.  *Id.* at 13; *see* PACT Act § 1(c).  Both the State cigarette laws and the PACT Act aim to prevent youth access to cigarettes.  Mem. at 14; *see also* Reply at 9; PACT Act § 1(c).  Lastly, the purpose of the State's comprehensive cigarette laws is to ensure "that financial burdens imposed on the state by cigarette smoking [are] borne by tobacco product manufacturers rather than by the state."  Compl. ¶ 17 (quoting Cal. Health & Safety Code § 104555(d)).

On balance, the court finds the balance of hardships sharply weigh in favor of California.  Azuma's entire business would not be shut down if Mr. Rose complied with applicable federal law.  An injunction will also serve the public's interest in preventing the distribution of illicit cigarettes, shifting the financial burdens of cigarette smoking from the public to tobacco

1  manufacturers, reducing youth smoking rates, and furthering the enforcement objectives of

2  federal and state law.

3       Balancing the factors, the court finds California has shown it is entitled to a preliminary

4  injunction against Mr. Rose.

5      **E.**    **Bond**

6       Under Federal Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary

7  injunction . . . only if the movant gives security in an amount that the court considers proper to

8  pay the costs and damages sustained by any party found to have been wrongfully enjoined or

9  restrained." Fed. R. Civ. P. 65(c).  District courts have "discretion as to the amount of security

10 required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in

11 original) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir.2003)).  In public interest

12 litigation, "requiring nominal bonds is perfectly proper[.]" *Save Our Sonoran, Inc. v. Flowers*,

13 408 F.3d 1113, 1126 (9th Cir. 2005).

14      Neither party has briefed this issue.  But at hearing, California argued the bond amount

15 should be a nominal amount given defendant's unlawful conduct.  Considering the strong public

16 interest implicated in this case, the fact defendants have not proffered any evidence as to the

17 appropriate bond amount, and because an injunction prohibiting Mr. Rose from not complying

18 with the applicable federal law would not impose significant losses, the court exercises its

19 discretion to set a nominal bond of $1,000.

20 **IV.**   **CONCLUSION AND INJUNCTION**

21      For the reasons above, the court **grants California's motion for a preliminary**

22 **injunction against defendant Darren Rose and denies the motion as to defendants Phillip**

23 **Del Rosa and Wendy Del Rosa without prejudice** to a broader injunction.

24      Defendant Darren Rose, in his official capacity as vice-chairman of the Alturas Indian

25 Rancheria and as president/secretary of Azuma Corporation, and his employees and agents are

26 hereby **enjoined** from completing or causing to be completed any delivery, or any portion of a

27 delivery, of packages containing cigarettes on behalf of Azuma Corporation to anyone in

28 California in violation of section 376a(e)(2)(A) of the PACT Act.  This injunction is effective

1  upon California's filing proof with the Clerk's office that it has posted a bond in the sum of

2  $1,000.  Mr. Rose may move to dissolve the injunction if he can show compliance with the PACT

3  Act or if he can show the State has unreasonably prevented him from complying with applicable

4  laws.  Defendants' motion for administrative relief to set further oral argument is **denied as moot.**

5      This order resolves ECF Nos. 13 and 41.

6      IT IS SO ORDERED.

7  DATED:  September 7, 2023.

8  _____

9  CHIEF UNITED STATES DISTRICT JUDGE

10