UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| State of California, | No. 2:23-cv-00743-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| Azuma Corporation, et al., | |
| Defendants. | |

The State of California brings this action against defendants Azuma Corporation, Phillip Del Rosa, Darren Rose and Wendy Del Rosa for declaratory relief, injunctive relief and civil damages and penalties for trafficking contraband cigarettes. Defendants move to dismiss California's claims. The court **grants the motion in part.**

I.  BACKGROUND

The court has summarized some of the relevant law and background of this case in a previous order and incorporates the factual background by reference here. *See* Prior Order, ECF No. 43. In summary, defendants are tribal officers of the Alturas Indian Rancheria, a federally recognized Indian Tribe, and a tribal corporation wholly owned by the Alturas Tribe. Compl. ¶¶ 8–11, 24, ECF No. 1. Azuma Corporation, the tribal corporation, sells cigarettes in California without complying with state taxation and tobacco regulations. *Id.* ¶ 8. It manufactures its own cigarettes, *id.* ¶ 47, and sells its cigarettes to retail cigarette shops located on Indian land, *id.* ¶ 49.

Mr. Del Rosa, Mr. Rose and Ms. Del Rosa respectively are the chairperson, vice-chairperson and secretary-treasurer of the Alturas Tribe, *id.* ¶¶ 9–11. The State sues the individual defendants in their official capacities; it also sues Mr. Rose and Mr. Del Rosa in their personal capacities. *Id.*

The State alleges defendants have refused to comply with the Prevent All Cigarette Trafficking (PACT) Act, have distributed contraband cigarettes in violation of the Contraband Cigarette Trafficking Act (CCTA), and have violated the State's cigarette laws since 2018. *Id.* ¶¶ 48–54, 71–73, 79, 86, 89–90. In the fall of 2022, the California Attorney General's Office sent Azuma a letter demanding it cease its "unlawful cigarette distributions and sales." *Id.* ¶ 60. But "Azuma continue[d] its unlawful activities." *Id.* ¶ 61. Mr. Rose and Mr. Del Rosa also have maintained "active participa[tion] in Azuma's contraband cigarette trafficking activities," *id.* ¶ 62, and effectively control the Alturas Tribe's economic affairs, *id.* ¶¶ 65–66. As a result, six months later, the State brought this suit to end defendants' noncompliance with federal and state law.

California brings the following five claims against defendants:

1) Violation of 15 U.S.C. §§ 376–376a (PACT Act) against all defendants;
2) Violations of 18 U.S.C. § 2342 (CCTA) against all defendants;
3) Violations of 18 U.S.C. § 1962(c) (Civil Racketeer Influenced and Corrupt Organization (RICO) Act), against defendants Darren Rose and Phillip Del Rosa;
4) Violations of California Revenue & Taxation Code section 30165.1 against all defendants; and
5) Violations of California Health & Safety Code section 104557 against all defendants.

*See id.* ¶¶ 67–93.

On September 8, 2023, this court granted California's motion for a preliminary injunction against defendant Darren Rose and denied the motion without prejudice as to defendants Phillip Del Rosa and Wendy Del Rosa. *See* Prior Order at 24. Defendants have filed a notice of appeal, ECF No. 44, and their appeal of this court's order is pending before the Ninth Circuit, *see* ECF Nos. 45 & 46. Separately, defendants move here to dismiss California's complaint. Mot., ECF No. 24-1. California opposes, Opp'n, ECF No. 33, and defendants have replied, Reply, ECF No. 38. The court held a hearing on this motion on October 13, 2023. *See* Mins. Hr'g, ECF No. 49.

Peter Nascenzi, Byron Miller and James Hart appeared for the State. *Id.* Conly Schulte and Gregory Narvaez appeared for defendants. *Id.*

## II. SUBJECT MATTER JURISDICTION

Defendants move to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Mot. at 8–23.[1] When a party moves to dismiss for lack of subject matter jurisdiction, "the plaintiff bears the burden of demonstrating that the court has jurisdiction." *Boardman v. Shulman*, No. 12-00639, 2012 WL 6088309, at *2 (E.D. Cal. Dec. 6, 2012). Where, as here, defendants move to dismiss on the basis of tribal sovereign immunity, "the party asserting subject matter jurisdiction has the burden of proving its existence, i.e.[,] that immunity does not bar the suit." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (internal citations and marks omitted).

### A. Tribal Sovereign Immunity

Absent congressional abrogation or explicit waiver, sovereign immunity bars suit against a federally recognized Indian tribe in federal court. *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1091 (9th Cir. 2007). The Alturas Tribe is a federally recognized Indian tribe and therefore is immune from suit. In addition to protecting tribes, tribal sovereign immunity "also extends to arms of the tribe acting on behalf of the tribe." *White v. Univ. of Cal.*, 765 F.3d 1010, 1025 (9th Cir. 2014). Thus, when a tribe "establishes an entity to conduct certain activities," regardless of whether it is business activities or governmental activities, "the entity is immune if it functions as an arm of the tribe." *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006) (citations omitted). The relevant question "is not whether the activity may be characterized as a business . . . , but whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe." *Id.* Defendants argue Azuma is an arm of the tribe and as a result is shielded by tribal sovereign immunity. *See* Mot. at 10.

///

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

To determine whether Azuma is entitled to sovereign immunity as an "arm of the tribe," the court examines the following factors:

> (1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities.

*White*, 765 F.3d at 1025 (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)).

The first factor weighs in favor of Azuma. The Alturas Indian Rancheria Business Committee established Azuma Corporation in accordance with its Governmental Corporation Ordinance. *See* Ordinance § 2.1, Del Rosa Decl. Ex. B, ECF No. 23-2 (noting the Ordinance establishes authority to "regulate the incorporation . . . of governmental corporations as distinct arms of the Tribal government"); Am. Articles of Incorp., Rose Decl. Ex. A, ECF No. 23-3. The Business Committee is part of the Alturas Tribe's Governing Body and comprises members of the Tribe. Alturas Const. art. IV, §§ 1–3, Del Rosa Decl. Ex. A, ECF No. 23-2. Under the Tribe's Constitution, the Business Committee has the power to "manage all economic affairs and enterprises of the Alturas Indian Rancheria[.]" Alturas Const. art. VII, § 2(e). Here, the method of creation weighs in favor of Azuma. *See, e.g.*, *Cadet v. Snoqualmie Casino*, 469 F. Supp. 3d 1011, 1015 (W.D. Wash. 2020) (considering similar facts).

The second factor also weighs in favor of Azuma. Corporations established under the Tribe's Ordinance are "created to carry out Tribal economic development and the advancement of Tribal members." Ordinance § 3.1. The specific purpose of Azuma is to "manufacture tobacco products as the corporation may deem advisable in Modoc County, California in the best interests of the Tribe." Am. Articles of Incorp. art. II. The purpose of Azuma weighs in its favor. *See, e.g.*, *Min Zhang v. Grand Canyon Resort Corp.*, No. 19-00124, 2020 WL 1000608, at *2 (C.D. Cal. Jan. 15, 2020) (purpose of "creating economic development opportunities" weighed in favor of extending sovereign immunity to a tribal entity).

Third, the structure, ownership, and management of Azuma, is neutral. The State disputed this factor during hearing. Here, defendants have shown the Alturas Tribe is the sole owner and shareholder of the corporation. Am. Articles of Incorp. art. VI; Governmental Corporation Ordinance § 4 ("At all times one hundred percent (100%) of each corporation's ownership interest shall be held by the Tribe, and it shall be considered an entity of the Tribe."). While it is unclear whether the directors and officers must be members of the Tribe, the members of the governing board are appointed by the Business Committee. Am. Articles of Incorp. art. V. The initial directors were defendants Phillip Del Rosa, Darren Rose and Wendy Del Rosa, all members of the Tribe. Articles of Incorp. Ex. A; *see* Compl. ¶¶ 9–11. Darren Rose is the current President/Secretary of Azuma. Rose Decl. ¶ 3, ECF No. 23-3. Additionally, the Alturas Tribe's Governmental Corporation Ordinance specially notes tribal corporations are "distinct arms of the Tribal government[.]" Ordinance § 2.1. However, because it is unclear who all the directors and officers of the Tribe are, and how much control non-tribal members have over Azuma's operation, the structure, ownership and management of Azuma is neutral. *See, e.g.*, *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 856 (9th Cir. 2019) (affirming wholly-owned corporation is an arm of the tribe).

Fourth, it is clear the Tribe intended to share its sovereign immunity. *See* Am. Articles of Incorp. art. III ("The Azuma Corporation is entitled to all of the privileges and immunities enjoyed by the Tribe."); Ordinance § 3.1. This factor also weighs in favor of Azuma.

Finally, the fifth factor also weighs in favor of Azuma. California does not dispute Azuma's evidence regarding factors one, two and four, but argues Azuma has not pointed to evidence relevant to the financial relationship between the tribe and its entities. Opp'n at 23–24. An "entity must do more than simply assert that it generates some revenue for the tribe in order to tilt this factor in favor of immunity[.]" *People v. Miami Nation Enters.*, 2 Cal. 5th 222, 248 (2016). Azuma has met this requirement here. It has shown it is a wholly-owned tribal corporation that uses its revenues to fund other tribal ventures. *See* Del Rosa Decl. ¶ 8, ECF No. 23-2. Defendant Darren Rose, who is the Vice Chairperson of the Alturas Tribe's Business Committee and President/Secretary of Azuma declares "[o]ne hundred percent (100%) of the

5

capital used for the establishment, construction, equipping and initial operating costs of Azuma manufacturing operation was provided by the Tribe." Rose Decl. ¶¶ 2–3, 8. Additionally, "the Tribe has invested more than nine million dollars ($9,000,000) into Azuma's tobacco manufacturing business." *Id.* ¶ 9. Moreover, the Governmental Corporation Ordinance states "[a] corporation chartered under this Ordinance shall distribute all profits of the corporation to the Tribe except that a corporation may retain reserves necessary to carry on corporate business in a reasonably prudent manner . . . ." Ordinance § 13.1. As a corporation charted under the Governmental Corporation Ordinance, Azuma's profits must be distributed to the Alturas Tribe. Defendant Phillip Del Rosa, who is a member of the Business Committee, declares the revenues generated by Azuma "are utilized to fund other economic development ventures that are wholly owned and operated by the Tribe including the Desert Rose Casino (Casino), AIR Construction Company, TWT Trucking company, AIR Fuel Transportation, and two fuel stations/retail stores." Del Rosa Decl. ¶ 8. These revenues currently are funding the expansion of Alturas's wholly owned casino. *Id.* The Tribe "supports services for Tribal members [and] provides numerous benefits to the surrounding community" through Azuma and its other entities. *Id.* ¶ 16. Azuma has provided evidence that the Tribe controls Azuma and Azuma's revenues directly benefit the Tribe. *Cf. Miami Nation Enters.*, 2 Cal. 5th at 251 (noting record contained "scant evidence that either tribe actually controls, oversees, or significantly benefits from the underlying business operations of the online lenders"). Here, the financial relationship between Azuma and the Tribe weighs in favor of Azuma.

Even if the third and fifth factors were neutral or weighed against Azuma, as California argues, those two factors are not dispositive. *Breakthrough Mgmt. Grp., Inc.*, 629 F.3d at 1187; *see also Matyascik v. Arctic Slope Native Ass'n, Ltd.*, No. 19-0002, 2019 WL 3554687, at *5 (D. Alaska Aug. 5, 2019) (observing Ninth Circuit derived the factors from the Tenth Circuit in *Breakthrough*, which held the financial relationship factor is not dispositive). Having considered the factors, the court finds Azuma is entitled to sovereign immunity as an arm of the Alturas Tribe. California's claims against Azuma are **dismissed.**

California suggests in a footnote the court might in the alternative order limited discovery. Opp'n at 24 n.3. The court construes the footnote as a request for discovery and **denies** that request because California has not shown discovery would yield materially relevant facts. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (no abuse of discretion in denying request for discovery "based on little more than a hunch that it might yield jurisdictionally relevant facts").

### B. *Ex parte Young*

Although tribal sovereign immunity may shield the Alturas Tribe and Azuma from suit, *Burlington N.*, 509 F.3d at 1091, it "does not bar such a suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct," *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 796 (2014) (emphasis in original). This well-established judge-made exception to sovereign immunity is known as the *Ex parte Young* doctrine. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908). *Ex parte Young* "has been extended to tribal officials sued in their official capacity such that tribal sovereign immunity does not bar a suit for prospective relief against tribal officers allegedly acting in violation of federal law." *Burlington N.*, 509 F.3d at 1092 (internal marks and citation omitted). Defendants, however, argue *Ex parte Young* does not apply in the context of the PACT Act and the CCTA. Mot. at 14–16.

*Ex parte Young* does not grant a limitless license to enjoin otherwise immunized conduct by naming individuals instead of governments. *See Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018). For example, "Congress may enact statutes with a detailed remedial scheme that explicitly or implicitly displaces the judge-made equitable remedy" that *Ex parte Young* offers. *Id.*; *see, e.g.*, *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 74 (1996). However, when a statutory scheme "places no restriction on the relief a court can award," nor says "whom the suit is to be brought against," but instead merely "authorize[s] federal courts to review whether" a challenged action complies with federal law, it does not restrict potential liability under *Ex parte Young*. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647–48 (2002).

As the court found in its prior order, the PACT Act does not preclude liability under *Ex parte Young*. *See* Prior Order at 7–10. The court will not revisit that argument here. The PACT

7

Act claim against the individual defendants, both in their official and personal capacities, may proceed.

However, without deciding whether the CCTA bars *Ex parte Young* actions, the court finds California's action under the CCTA is barred by statute. The CCTA explicitly prohibits states from bringing a civil action "against an Indian tribe or an Indian in Indian country[.]" 18 U.S.C. § 2346(b)(1). The CCTA does not define "Indian," but does define "Indian country" as "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . . , (b) all dependent Indian communities within the borders of the United States . . . , and (c) all Indian allotments . . . ." 18 U.S.C. § 1151. The court liberally construes the CCTA "in favor of the Indians, with ambiguous provisions interpreted to their benefit[.]" *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985).

California argues this exemption does not apply because it is suing for violations that occurred outside of Indian country. Opp'n at 29. Here, the statute does not prohibit suits based on where the alleged violations took place. *See* 18 U.S.C. § 2346(b)(1). Rather, it conclusively provides no civil suits may be brought by states against Indians in Indian Country. California does not dispute the individual defendants are "Indians" who are in Indian country. *Cf. New York v. Mountain Tobacco Co.*, 942 F.3d 536, 548 (2d Cir. 2019) (holding exemption applies to wholly owned tribal entity). The State does not make any allegations that any of the individual defendants left Indian Country to engage in unlawful conduct. *See generally* Compl. The court finds the individual defendants are shielded from civil suits brought by California under the CCTA. *Cf. United States v. Approximately one Million Seven Hundred Eighty Four Thousand (1,784,000) Contraband Cigarettes of Assorted Brands from the Indian Country Smoke Shop Main Store*, No. 12-5992, 2016 WL 7387094, at *3 (W.D. Wash. Dec. 21, 2016) ("While § 2346(b)(1) prohibits local state governments from enforcing the CCTA against an Indian tribe or an Indian in Indian Country, no such restriction exists for the United States Government."). California's claim under the CCTA is **dismissed, but with leave to amend if possible within the confines of Rule 11.**

Lastly, California has not identified, and this court has not found any authority extending *Ex parte Young* to suits seeking relief against tribal officers as individuals for violations of state law.  However, the Supreme Court has found "when a plaintiff alleges that a state official has violated *state* law[,] . . . the entire basis for the doctrine of *Young* and *Edelman* disappears." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (emphasis in original). Likewise, the court finds *Ex parte Young* does not extend to suits against tribal officers for violating state law.  As a remedy "designed to end a continuing violation of federal law," *Ex parte Young* "gives life to the Supremacy Clause" by vindicating federal interests and assuring the supremacy of federal law.  *See Green v. Mansour*, 474 U.S. 64, 68 (1985).  A grant of relief based on state law, however, "does not vindicate the supreme authority of federal law." *Pennhurst*, 465 U.S. at 106.  Thus, violations of state law do not implicate the *Ex parte Young* doctrine; the tribal officers, as sued in their official capacities, are immune from liability for violations of state law.  *Cf. Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1181 (9th Cir. 2012) ("[*Ex parte Young*] permits actions for prospective non-monetary relief against state or tribal officials in their official capacity to enjoin them from violating federal law[.]").  California's state law claims against the individual defendants in their official capacities are **dismissed without leave to amend**.  As explained below, however, the state claims brought against defendants Phillip Del Rosa and Darren Rose in their personal capacities may proceed.

C.   **Qualified Immunity**

Defendants Phillip Del Rosa and Darren Rose argue they are entitled to qualified immunity to the extent they are sued in their personal capacities.  Defendants bear the burden of showing qualified immunity shields them from liability.  *See Forrester v. White*, 484 U.S. 219, 224 (1988) ("Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy.").  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  California is not seeking damages for violation

of its rights.  Rather, it is seeking to enforce Federal and State laws.  Defendants do not cite, nor can the court find, any authority extending qualified immunity to tribal officers sued in their personal capacities for violating federal and state laws.  *See* Mot. at 16–23; Opp'n at 31 n.7.

Defendants have not shown they are entitled to qualified immunity.  Additionally, sovereign immunity does not shield them from liability; the Ninth Circuit has clearly held "tribal defendants sued in their *individual* capacities for money damages are not entitled to sovereign immunity, even though they are sued for actions taken in the course of their official duties." *Pistor*, 791 F.3d at 1112 (emphasis in original); *see Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("[O]fficers sued in their personal capacity come to court as individuals.").  Defendants Phillip Del Rosa and Darren Rose have not met their burden of showing they are shielded from personal liability.  The PACT Act claim and the state law claims brought against them in their personal capacities may proceed.

### III.   FAILURE TO JOIN A PARTY UNDER RULE 19

Federal Rule of Civil Procedure 12(b)(7) allows litigants to request dismissal for "failure to join a party under Rule 19."  The court already has found tribal retailers are not necessary parties and will not revisit this argument.  *See* Prior Order at 10–13.[2]

### IV.   FAILURE TO STATE A CLAIM

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In response, the court begins by assuming the complaint's factual allegations are true, but not its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citation omitted).  The court construes all factual allegations "in the light most favorable to the nonmoving party." *Steinle v. City of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted).  The court then determines whether those factual allegations "plausibly give rise to an entitlement to relief" under Rule 8. *Ashcroft*, 556 U.S. at 679.

---

[2] Defendants improperly raised new arguments during hearing challenging this court's order granting in part California's motion for preliminary injunction.  The court does not consider those arguments here.  The court also notes defendants have not moved the court to reconsider its prior order and have already filed an appeal with the Ninth Circuit Court of Appeals.

Defendants argue California cannot state a claim under Civil RICO. Specifically, defendants argue California's CCTA claim is foreclosed by the definition of contraband cigarettes and also is "fatal to the State's RICO claim . . . , which is premised entirely on the allegation that Rose and Phillip Del Rosa, through the Azuma enterprise . . . engaged in multiple and repeated acts of cigarette trafficking in violation of the CCTA[.]" Mot. at 23 (internal marks and citations omitted). Although defendants are shielded from liability under the CCTA as noted above, that protection does not preclude California from bringing a civil RICO claim against defendants for engaging in a pattern of racketeering activity. *Cf. United States v. Fiander*, 547 F.3d 1036, 1042 (9th Cir. 2008) ("[A]lthough [defendant] may not be prosecuted for a substantive violation of the CCTA because of his status as a member of the Yakama Nation, he may be prosecuted for a RICO conspiracy in which the racketeering activity is contraband cigarette trafficking."). Thus, although the court finds California cannot bring a civil action against defendants under the CCTA, as noted, the court examines whether California has sufficiently alleged defendants have violated the CCTA to determine whether California has stated a claim for Civil RICO, which is premised on the alleged violations of the CCTA.

Under the CCTA, it is "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a). The CCTA defines "contraband cigarettes" as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes . . . and which are in the possession of any person other than [] a person holding a permit issued pursuant to chapter 52 of the Internal Revenue Code of 1986 [IRC] as a manufacturer of tobacco products . . . or an agent of such person[.]" 18 U.S.C. § 2341(2)(A). Azuma possesses a federal permit to manufacture tobacco products. Compl. ¶¶ 8, 41; Rose Decl. ¶ 6; Permit, Rose Decl. Ex. B. Therefore, Azuma's unstamped cigarettes are not contraband while it possesses the cigarettes. *See* Opp'n at 27. However, the cigarettes do become contraband when Azuma no longer possesses the cigarettes. Thus, for example, common carriers that receive the unstamped cigarettes, distributors who distribute these cigarettes and retailers who receive these cigarettes may violate the CCTA. *See City of New York v. Gordon*, 1 F. Supp. 3d 94, 106 (S.D.N.Y. 2013).

1   California has not alleged defendants have shipped, transported, received, possessed, sold,
2   distributed or purchased contraband cigarettes, because as long as the cigarettes are in Azuma's
3   possession, they are not "contraband" as defined by the statute.  California fails to state a civil
4   RICO claim because it has not sufficiently alleged the underlying violations of the CCTA.  This
5   claim is **dismissed, but with leave to amend.**

   In a footnote, signaling its alternative position, California requests leave to amend the complaint to include a civil federal conspiracy claim under 18 U.S.C. § 1962(d).  Opp'n at 30 n.5. That request is **granted**.  *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) ("[I]n dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

   Because defendants do not move to dismiss the PACT Act claim and state law claims under Rule 12(b)(6), the court declines to address the issue sua sponte.

## V.     CONCLUSION

   Defendants' motion to dismiss is **granted in part and denied in part**.

   1) California's claims against Azuma Corporation are **dismissed without leave to amend**.
   2) California's CCTA claim is **dismissed with leave to amend**.
   3) California's Civil RICO claim is **dismissed with leave to amend.**
   4) California's state law claims against defendants Phillip Del Rosa, Darren Rose and Wendy Del Rosa in their official capacities as officers of the Alturas Tribe are **dismissed without leave to amend**.

   Any amended complaint shall be filed **within 21 days** of the filing date of this order.

   This order resolves ECF No. 24.

   IT IS SO ORDERED.

DATED: January 24, 2024.

CHIEF UNITED STATES DISTRICT JUDGE