UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| State of California, | No. 2:23-cv-00743-KJM-SCR |
| Plaintiffs, | ORDER |
| v. | |
| Phillip Del Rosa, et al., | |
| Defendants. | |

In a previous order, this court held defendant Darren Rose in contempt for violations of the preliminary injunction in this action. *See generally* Prev. Order (Feb. 28, 2024), ECF No. 71. The court permitted California to seek sanctions "to ensure compliance with the court's order," including attorneys' fees and costs. *See id.* at 7–8. California has now filed its request, which Rose opposes in part. *See generally* Mot., ECF No. 82; Opp'n, ECF No. 87. The state has replied, and the court took the matter under submission without hearing oral arguments. *See generally* Reply, ECF No. 91; Min. Order, ECF No. 92.

District courts have inherent power to enforce preliminary injunctions using contempt proceedings. *N.L.R.B. v. S.F. Typographical Union No. 21, Int'l Typographical Union, AFL-CIO*, 465 F.2d 53, 56 (9th Cir. 1972). A court may use its civil contempt powers both "to coerce the defendant into compliance with the court's order" and "to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016)

1

(quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). "Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *United Mine Workers*, 330 U.S. at 304 (footnotes omitted).

I.     **DISCUSSION**

    A.     **Unpaid Taxes and Fees.**

California argues "Rose's violations of the Court's preliminary injunction directly injured the State by depriving it of tax revenue." Mot. at 4. It contends "[e]ach of Azuma's cigarette distributions is taxable, and the continued distribution of millions of cigarettes each month under Rose's direction in violation of the Court's order has deprived the State of millions of dollars." *Id.* The state similarly argues Rose's sales "deprived the State of escrow fees owed" in connection with a state law related to the "landmark" 1998 Master Settlement Agreement with many cigarette manufacturers. *See id.* at 5–6 & n.1 (citing Cal. Health & Safety Code § 104555(d)).

The court denies the state's request for sanctions based on these theories of harm. Ordering Rose to pay taxes and fees now would, in effect, award damages to the state prematurely. California has not proved any defendant is actually liable; it has proved only that it is likely to prevail. If the state ultimately proves its claims, it may then seek to recover any unpaid tax revenues or escrow fees, and that recovery could potentially include taxes losses while the preliminary injunction remained in effect. The state also could request and prove it is entitled to interest given the passage of time since the violations in question. But the court does not reach these questions now.

    B.     **Attorneys' Fees and Costs.**

California requests an award of attorneys' fees in connection with its efforts to obtain Rose's compliance with the preliminary injunction. "[I]n civil contempt actions, 'a court may assess attorneys' fees as part of the fine to be levied on the defendant.'" *Donovan v. Burlington N., Inc.*, 781 F.2d 680, 682 (9th Cir. 1986) (other alterations and emphasis omitted) (quoting

1 *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975)). Courts use the "lodestar" method to calculate a reasonable award in cases of a litigant's civil contempt. *See, e.g.*, *MetaQuotes Ltd. v. MetaQuotes Software Corp.*, No. 22-00462, 2023 WL 3432157, at *1 (C.D. Cal. Jan. 30, 2023) (citing *Innovation Ventures, LLC v. Distrib., Inc.*, No. 12-00717, 2015 WL 5319815, at *2 (C.D. Cal. Apr. 29, 2015)). "The 'lodestar' is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, resulting in a figure that is 'presumptively reasonable.'" *Id.* (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996)). The court may then adjust the lodestar award upward or downward to account for the circumstances of the case and representation. *See id.*

The state's request is based on time spent by four attorneys on its motion seeking to hold Rose in contempt.[1] First, James V. Hart, an attorney with 19 years' experience, spent 2.5 hours, and the state requests an hourly rate of $545. Second, David C. Goodwin, an attorney with 11 years' experience, spent 30.5 hours, and the state requests an hourly rate of $475. Third, Byron M. Miller, an attorney with 12 years' experience, spent 3 hours, and the state requests an hourly rate of $475. And fourth, Peter F. Nascenzi, an attorney with 7 years' experience, spent 45.25 hours, and the state requests an hourly rate of $475. *See* Mot. at 8; Hart Decl. at 3–4. The state submitted detailed billing records in support of its motion. *See* Hart Decl. Ex. A, ECF No. 82-2.

Rose does not dispute that these hourly rates are reasonable in the Sacramento market. *See* Opp'n at 12–13. The court finds they are reasonable for a Sacramento-area case of this type and complexity. *See, e.g.*, *Goodson v. Cnty. of Plumas*, No. 18-03105, 2024 WL 99847, at *3 (E.D. Cal. Jan. 9, 2024) (collecting reasonable rates); *Mostajo v. Nationwide Mut. Ins. Co.*, No. 17-00350, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (same). Nor does Rose identify any duplicative, wasteful or otherwise objectionable tasks in the state's records documenting the

---

[1] These attorneys are Deputy Attorneys General employed by the California Attorney General's Office. *See* Hart Decl. ¶ 3, ECF No. 82-2. They do not claim to charge hourly rates to paying clients as such, but the parties have expressed no doubts that analogous hourly rates charged by attorneys in private practice within this district are a rational starting point for calculating a reasonable fee award. *Cf. id.* at 5 (reporting research into hourly rates charged in other cases by private counsel cases). The court also finds that comparison is appropriate.

1   attorneys' work.  The court has reviewed the records and finds counsel dedicated a reasonable
2   number of hours to obtaining Rose's compliance with the preliminary injunction.
3       Rose contends the state's fee request is "inflated" because "only a fraction of the fees
4   claimed in this motion are compensatory." Opp'n at 12.  By his reasoning, the state's fee request
5   is "punitive" rather than "compensatory" because the state has "failed to support its claims for
6   lost excise tax revenue and escrow fees." *Id.* at 13.  As the state correctly points out, however, its
7   fee request is tied to its attempt to obtain Rose's compliance with the preliminary injunction, not
8   its current request for fees and sanctions. *See* Reply at 5.  The requested fee award is
9   compensatory, not punitive.
10      The state does not request an adjustment to the lodestar award, and the court finds none is
11  necessary to ensure the award is reasonable.  The court grants the state's motion for an award of
12  $40,668.75 in attorneys' fees.
13          **C.     Prospective Sanctions.**
14      The state also requests prospective monetary and nonmonetary sanctions to ensure Rose
15  remains in compliance with the preliminary injunction.  First, the state requests contingent
16  monetary sanctions: $10,000 for the first day of any future noncompliance, $12,000 for the
17  second day, and so forth, reaching $18,000 on the fifth day. *See* Mot. at 9.  On the sixth day of
18  noncompliance, however, the state proposes imprisonment. *See id.*  The state also requests an
19  order directing Rose to submit either (1) monthly "PACT Act reports that confirm with the
20  requirements of 15 U.S.C. § 376(a)" or (2) "a declaration under penalty of perjury that Azuma
21  made no cigarette deliveries." *Id.* at 10.  Finally, the state also requests an order directing Rose to
22  "retain for inspection by the State all of Azuma's purchase records, sales, and invoices dated after
23  the injunction came into effect on September 15, 2023." *Id.*
24      Courts may employ coercive sanctions to deter future violations of their orders. *Shell*,
25  815 F.3d at 629.  These sanctions "generally take the form of conditional fines." *Id.*  They "may
26  only be imposed 'after a reasoned consideration' of 'the character and magnitude of the harm
27  threatened by the continued contumacy, and the probable effectiveness of any suggested sanction
28  in bringing about the result desired.'" *Parsons v. Ryan*, 949 F.3d 443, 457 (9th Cir. 2020)

(quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)).  The court also does have the power to confine a contemnor until that person complies.  *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994).

Rose does not oppose the state's request for the prospective or conditional sanctions above, which the court agrees are reasonable measures to ensure compliance with the preliminary injunction.  The reporting and recordkeeping requirements will help ensure full compliance with the preliminary injunction and will impose no onerous burdens.  The conditional monetary and nonmonetary sanctions are necessary to reduce incentives to otherwise not comply; the court expects no conditional sanction will be imposed, but if a sanction is necessary, it will be as only a "short-lived tool," *Parsons*, 949 F.3d at 457 (citation omitted), which the court would only impose after Rose has an opportunity to be heard, as specified in the conclusion of this order.

## II. CONCLUSION

The State's motion for sanctions is **granted in part and denied in part** as follows:

1. The request for unpaid excise taxes and escrow fees is denied.
2. The request for $40,668.75 in attorneys' fees is granted, to be paid within seven days from the filed date of this order.
3. While the preliminary injunction is in place or until a further order of this court, Rose shall file on the docket of this action either (1) PACT Act reports that confirm with the requirements of 15 U.S.C. § 376(a) or (2) a declaration under penalty of perjury that Azuma made no cigarette deliveries, and in either event shall do so for each month beginning with February 2024 no later than the tenth day of the following calendar month.
4. While the preliminary injunction is in place or until a further order of this court, Rose shall retain for inspection by the State all of Azuma's purchase records, sales, and invoices dated after the injunction came into effect on September 15, 2023.
5. Any future noncompliance with the preliminary injunction or the nonmonetary sanctions above will result in the following further sanctions: $10,000 for the first day of noncompliance, $12,000 for the second day of noncompliance, $14,000 for

the third day of noncompliance, $16,000 for the fourth day of noncompliance, and $16,000 for the fifth day of noncompliance. Noncompliance beyond the sixth day may result in a custodial sanction.

6. The court will not impose any sanction under paragraph 5 above unless the state files a notice of violation on the docket of this action, supported by a declaration of a person with knowledge of the violation. The court will then promptly set a hearing on an order to show cause why additional sanctions should not be imposed under this order.

This order resolves ECF No. 82.

IT IS SO ORDERED.

DATED: November 15, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE