UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| State of California,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>Phillip Del Rosa, et al.,<br><br>　　　　　Defendants. | No. 2:23-cv-00743-KJM-SCR<br><br>ORDER |

California alleges the Azuma Corporation, Phillip Del Rosa, Darren Rose, and Wendy Del Rosa have violated federal and state law by selling cigarettes without collecting or paying taxes and fees. *See, e.g.*, First Am. Compl. ¶¶ 53–63, 82–93, ECF No. 68. In a previous order, this court granted defendants' motion to dismiss some of the state's claims. *See generally* Prev. Order (Jan. 24, 2024), ECF No. 58. Among the claims the court dismissed were those California asserted under state law against the individual defendants in their official capacities as the leaders of the Alturas Indian Rancheria, a federally recognized Indian Tribe. The court concluded the tribe and its officers in their official capacities are immune from liability under state law. *See id.* at 9.

In dismissing these claims, the court decided the state could not rely on the Supreme Court's decision in *Ex parte Young*. *See id.* (citing 209 U.S. 123 (1908)). *Ex parte Young* permits plaintiffs to seek prospective injunctive relief against state and tribal officials based on

1

violations of federal law. *See id.* at 7 (citing *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092 (9th Cir. 2007)). The parties cited no authority extending the *Ex parte Young* doctrine to state-law claims against tribal officials, and the court had found none. *See id.* at 9; *see also* Hr'g Tr. 8:10–14, ECF No. 56 ("The Court: Are you pointing to any authority extending *Ex parte Young* to suits against tribal officers for violations of state law? [State's Counsel:] No, Your Honor. We could not find any authority on that matter."). The court also hesitated to extend *Ex parte Young* beyond violations of federal law, as the Supreme Court has relied fundamentally on the constitutional supremacy of federal law when it has delineated the limits of the *Ex parte Young* doctrine. *See* Prev. Order (Jan. 24, 2024) at 9 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). As it has said, without that federal-law foundation, "the entire basis" of the *Ex parte Young* doctrine "disappears." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

California asks the court to reconsider. It now has identified cases that, in its view, confirm plaintiffs may obtain prospective injunctive relief against tribal officials for violating state law. *See* Mot. Recons. at 5–7, ECF No. 78. Defendants disagree with the state's position and with the reasoning in the cases it cites. *See generally* Opp'n, ECF No. 86. The court received full briefing and took the matter under submission without holding a hearing. *See generally* Reply, ECF No. 89; Min. Order, ECF No. 92.

A district court has authority to reconsider its own pretrial decisions. *See City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001). But motions for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (emphasis in original). California has offered no explanation for its previous failure to cite the cases it now brings to the court's attention. For that reason, the court will not revisit its previous decision unless that decision was clearly in error. *See 389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

The first case California cites is one the parties previously cited and discussed in their briefs, *Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014). In that case, a federally

recognized Indian tribe—the Bay Mills Indian Community—planned to open a casino outside its territory in a small Michigan town. *See id.* at 786. Michigan sued in federal district court, seeking an order blocking the tribe from operating the planned casino. *See id.* at 787. The district court issued a preliminary injunction, but the court of appeals vacated that injunction based on the tribe's sovereign immunity. *See id.* The Supreme Court agreed the tribe was immune and affirmed. *See id.* at 788–97.

The Supreme Court cited *Ex parte Young* in its explanation for why it rejected Michigan's arguments, but it did not hold that Michigan could proceed under *Ex parte Young*. *Id.* at 796. The Court's discussion of *Ex parte Young* related instead to its interpretation of the Indian Gaming Regulatory Act. *See id.* As Michigan had pointed out, that act permits states to sue Indian tribes for illegal gambling that occurs within an Indian reservation in some situations. *Id.* at 791–93. Why, then, Michigan asked, couldn't it pursue a similar lawsuit against a tribe for illegal gambling that occurs outside that tribe's reservation? *See id.* The Court was untroubled by this "apparent anomaly." *Id.* at 794. "[S]uch anomalies often arise from statutes, if for no other reason than that Congress typically legislates by parts—addressing one thing without examining all others that might merit comparable treatment." *Id.* Nor did the Supreme Court believe its holding was truly as "enigma[tic]" as Michigan suggested. *Id.* at 795 (alteration in original). If the tribe went forward with its plan to operate a casino outside its reservation, then Michigan could deny it a gambling license and "bring suit against tribal officials or employees (rather than the Tribe itself) seeking an injunction for, say, gambling without a license." *Id.* at 796. The Court read its previous decisions as "analogizing to *Ex parte Young*" and holding that "tribal immunity does not bar such a suit for injunctive relief against individuals, including tribal officers, responsible for unlawful conduct." *Id.* (emphasis omitted). In short, the Supreme Court did not apply *Ex parte Young* in *Bay Mills*, and it did not actually consider whether any particular alternative claim would be permissible under the *Ex parte Young* doctrine or an analogous rule. Nor did the Court define or recognize any new analogous doctrine. It cited *Ex parte Young* only indirectly to explain why Michigan had overstated the negative effects of a ruling for the

opposing tribe. The Court's decision in *Bay Mills* therefore reveals no "clear error" justifying reconsideration.

The Supreme Court was not writing on a blank slate in *Bay Mills*, but its previous decisions offer no greater clarity. The case the Supreme Court described as "analogizing to *Ex parte Young*" in *Bay Mills* was *Santa Clara Pueblo v. Martinez*, an action against a tribe and its governor. *See* 436 U.S. 49, 51 (1978). The plaintiffs alleged the tribe's membership rules discriminated against them in violation of federal law. *See id.* The Court concluded the tribe itself was immune to these claims. *See id.* at 58–59. But the tribal governor was "not protected by the tribe's immunity from suit." *Id.* at 59. The Court could assess the claim against him without depriving the tribe of its immunity, which it did. *See id.* at 59–70. And so, rather than holding that the plaintiffs could pursue state law claims against tribal officers—as California now asks this court to do—the Supreme Court permitted the plaintiffs to assert federal law claims against the tribal officers. An analogy to *Ex parte Young* was compelling in *Santa Clara Pueblo*: tribal officials, like state officials, must comply with federal law. *See Burlington N.*, 509 F.3d at 1092. The analogy is more difficult to make in a case like this one, in which the tribal officials allegedly violated state law. For example, is state law "supreme" in an analogous sense? The answer is unclear. *Santa Clara Pueblo* therefore does not demonstrate any "clear error" and does not support the state's request for reconsideration.

Elsewhere in *Bay Mills*, the Supreme Court discussed its previous decision in *Puyallup Tribe, Inc. v. Washington*, 433 U.S. 165 (1977). And in *Santa Clara Pueblo*, the Court also cited *Puyallup Tribe* to support its conclusion that the governor was not protected by the tribe's immunity. *See* 436 U.S. at 59. But *Puyallup Tribe*, like *Santa Clara Pueblo*, was about a different sort of claim than the one California asserts in this case. The State of Washington was attempting to enforce its conservation laws to stop unlicensed fishing, both against a tribe and its individual members. *See* 433 U.S. at 168. The Supreme Court held the tribe was immune but the individual members were not. *See id.* at 171–72. If the state had authority to regulate the behavior in question and could obtain personal jurisdiction over the individual defendants, the case against them could proceed. *See id.* at 173; *see also* at 175 (noting petitioners had conceded

Washington had "civil and criminal jurisdiction within the reservation for most purposes" and rejecting petitioners' contention the state could not regulate fishing). This holding does not confirm tribal officials can be enjoined based on an analog of the *Ex parte Young* doctrine. It instead seems to apply the general rule that individual Indians who go "'beyond reservation boundaries' are subject to any generally applicable state law." *Bay Mills*, 572 U.S. at 795 (quoting *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 113 (2005)). California does not rely on that general theory in its motion to reconsider.

Applying these precedents in this case is not an easy exercise. It is far from clear that *Puyallup Tribe* exposes any error in this court's previous order. Nor did the Supreme Court engage in a nuanced analysis of its precedents in *Bay Mills*: it did not distinguish federal law claims from state law claims; it did not distinguish claims against tribal officials from claims against individual members; it did not distinguish claims against tribal officials in their official capacities from claims against them in their individual capacities. It simply explained its belief that Michigan could probably regulate gambling within its borders without depriving the Bay Mills Indian Community of its sovereign immunity. The Supreme Court certainly did not permit federal district courts to order tribal officials, sued in their official capacities as officials of the tribe, not to violate state laws. In short, any error in this court's previous decision was not "clear error," at least not with respect to the holding of *Bay Mills*.

The state also relies on decisions by the Courts of Appeals for the Eleventh, Second and Fourth Circuits, which have interpreted *Bay Mills* as extending or creating an analog of the *Ex parte Young* doctrine that applies to at least some state law claims against tribal officials. *See* Mot. Recons. at 3 (citing *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021); *Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019); and *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278 (11th Cir. 2015)). Those opinions of course are not binding on this court. *See Hart v. Massanari*, 266 F.3d 1155, 1173 (9th Cir. 2001). Nonbinding decisions from outside the circuit do not ordinarily justify reconsideration. *See, e.g.*, *York v. Hernandez*, No. 09-6080, 2010 WL 4366022, at *2 (N.D. Cal. Oct. 27, 2010) (denying reconsideration motion based in part on arguments about "out-of-circuit cases").

This is not to say the cited opinions are unpersuasive. They may very well be. California could and should have cited and discussed them in opposition to the defendants' previous motion to dismiss. Doing so would have permitted this court to make a more informed decision. That is why the court asked California's counsel at hearing whether the state had identified any authority extending *Ex parte Young* to suits against tribal officers for violations of state law. *See* Hr'g Tr. 8:10–12. California cannot correct its "procedural failures" and "advance new arguments" now in a motion for reconsideration. *City of Fresno v. United States*, 709 F. Supp. 2d 888, 916 (E.D. Cal. 2010) (quoting *DiMarco–Zappa v. Cabanillas*, 238 F.3d 25, 34 (1st Cir. 2001)). "Parties must make their best arguments in the first instance, so that through the clash of these positions, their relative strengths may become apparent." *See Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02-9629, 2004 WL 1488511, at *5 (S.D.N.Y. July 2, 2004). "Were it permissible for a party to deploy additional evidence or arguments in successive and repetitive motions, a court decision would provide little meaningful repose to a litigant." *Id.*

For these reasons, the court **denies** the motion to reconsider (ECF No. 78).

IT IS SO ORDERED.

DATED: November 15, 2024.

_____
SENIOR UNITED STATES DISTRICT JUDGE