1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   State of California,                              No. 2:23-cv-00743-KJM-SCR

12                    Plaintiff,                        ORDER

13         v.

14   Phillip Del Rosa et al.,

15                    Defendants.

16

17         In this action, the court granted California's motion for a preliminary injunction and

18   enjoined defendant Darren Rose in his official capacity as vice-chairman of the Alturas Indian

19   Ranchera and as president/secretary of the Azuma Corporation from delivering cigarettes to

20   anyone in California in violation of the Prevent All Cigarette Trafficking Act (PACT Act or the

21   Act) § 376a(e)(2)(A).  Having previously held Rose in contempt on February 28, 2024, the court

22   provided for the possibility of prospective monetary and nonmonetary sanctions in the event of

23   future violations to ensure compliance with the preliminary injunction.  California now asserts

24   Rose again violated the preliminary injunction and should be subject to the prospective sanctions.

25   The court finds Rose did violate the preliminary injunction, and his conduct therefore implicates

26   the prior order imposing prospective sanctions.  Taking account of the complex procedural

27   history and record of the case, the **court sets a future hearing** on the proper application of the

28   prospective sanctions order.

                                                    1

1    **I.    BACKGROUND**

2         The court, having summarized the relevant background of this case in multiple previous

3    orders, incorporates that background by reference here.  Prelim. Inj. Order, ECF No. 43; Mot.

4    Dismiss Order (Jan. 24, 2024), ECF No. 58; Mot. Dismiss Order (Nov. 18, 2024), ECF No. 97.

5    In summary, California alleges Azuma Corporation (Azuma), a tribal corporation wholly owned

6    by the federally recognized Alturas Indian Rancheria (the Tribe), distributes cigarettes to various

7    retailers owned by other Indian tribes (Tribal Retailers) in violation of the PACT Act.  *See*

8    *generally* First Am. Compl., ECF No. 68.

9         As required by the PACT Act, the Attorney General of the United States compiles and

10   maintains a list of non-compliant cigarette delivery sellers and distributes the list to certain

11   statutorily identified persons including: "the attorney general and tax administrator of every

12   State[,] persons that deliver small packages to consumers in interstate commerce[, and] any other

13   person that the Attorney General of the United States determines can promote the effective

14   enforcement of [the PACT Act.]"  *Id.* § 376a(e)(1)(A).  Recipients of the list and any person who

15   delivers cigarettes to consumers shall not "knowingly complete, cause to be completed, or

16   complete its portion of a delivery of any package for any person whose name and address are on

17   the [non-compliant] list, unless" an exception applies.  *Id.* § 376a(e)(2)(A).  A relevant exception

18   exists if "the delivery is made to a person lawfully engaged in the business of manufacturing,

19   distributing, or selling cigarettes or smokeless tobacco[.]"  *Id.* § 376a(e)(2)(A)(ii).  The PACT

20   Act allows for enforcement by state attorneys general, local governments and Indian Tribes that

21   levy taxes subject to § 376(a)(3).  *Id.* § 378(c)(1)(A).

22        Because Azuma does not hold a state cigarette license and does not remit state cigarette

23   taxes, the U.S. Attorney General placed Azuma on the PACT Act non-compliant list.  15 U.S.C.

24   § 376(e)(1).  After Azuma persisted in delivering cigarettes to Tribal Retailers despite being on

25   the non-compliant list, California sought a preliminary injunction against Azuma and its officers,

26   including Rose, for continued violations of the Act's Prohibited Delivery Provision,

27   § 376a(e)(2)(A).

1    On September 7, 2023, the court granted California's Motion for a Preliminary Injunction

2    against defendant Rose in his official capacity as the Vice Chairperson of the Tribe and

3    president/secretary of Azuma Corporation.  Prelim. Inj. Order at 24–25.  Specifically, the court

4    issued the following injunction:

> 5    Defendant Darren Rose, in his official capacity as vice-chairman of
> 6    the Alturas Indian Rancheria and as president/secretary of Azuma
> 7    Corporation, and his employees and agents are hereby **enjoined** from
> 8    completing or causing to be completed any delivery, or any portion
> 9    of a delivery, of packages containing cigarettes on behalf of Azuma
> 10   Corporation to anyone in California in violation of section
> 11   376a(e)(2)(A) of the PACT Act.

12   *Id.* at 24 (emphasis in original).

13   Defendants unsuccessfully appealed the court's order.  *See* Notice of Appeal (Sept. 15,

14   2023), ECF No. 44; U.S. Court of Appeals Mem. (Sept. 10, 2024), ECF No. 94; *California v.

15   Azuma Corp.*, No. 23-16200, 2024 WL 4131831 at *2 (9th Cir. Sept. 10, 2024).  While the appeal

16   was pending, California asked the court to issue an order to show cause why Rose should not be

17   held in civil contempt for failure to comply with the preliminary injunction.  Mot. Show Cause at

18   2, ECF No. 50.  The court granted the motion and issued an order to show cause; in response,

19   Rose asserted the injunction was ambiguous, California did not have subject matter jurisdiction

20   over the action and that Rose did not violate the preliminary injunction because § 376a(e)(2)(A)

21   only applies to third party deliverers and not Azuma or its officers.  *See generally* Opp'n Mot.

22   Show Cause, ECF No. 53.  The court was not persuaded.[1]  Order (Feb. 28, 2024) at 5–6, ECF

23   No. 71.

24   California submitted sufficient evidence to show Rose violated the preliminary injunction

25   and Rose did not demonstrate his inability to comply with the injunction.  Order (Feb. 28, 2024)

26   at 6.  The court therefore held Rose in contempt, awarded attorneys' fees and provided for

27   prospective and conditional sanctions.  *Id.* at 7–8 (citing *Int'l Union, United Mine Workers of Am.*

---

[1] Defendants presented a similar argument to the Ninth Circuit when appealing this court's grant of a preliminary injunction.  The Ninth Circuit also found defendants' argument unconvincing: "The Defendants are incorrect in arguing the Prohibited Delivery Provision of the PACT Act applies to third parties delivering tobacco on behalf of a listed entity [and not to Rose] . . . . [N]othing in the text of the statute supports that limitation."  *Azuma Corp.*, WL 4131831 at *2.

1    *v. Bagwell*, 512 U.S. 821, 827 (1994)); Mot. Sanctions, ECF No. 82; Opp'n Sanctions, ECF

2    No. 87; Reply Sanctions, ECF No. 91; Order (Nov. 18, 2024), ECF No. 95.

3          California asserts it requested Azuma's reporting and recordkeeping within thirty days

4    after the court filed the Sanctions Order on November 18, 2024. Notice at 3. "After several

5    delays," the parties stipulated to a production schedule and Rose provided the required documents

6    on January 31, 2025. *Id.* Shortly thereafter, on February 5, 2025, California filed a Notice of

7    Violation asserting Rose "completed or caused to be completed the delivery, or some portion of

8    the delivery, of packages containing 29,376,000 cigarettes to persons throughout California" in

9    the eleven months since the court's contempt order. Notice at 3, ECF No. 108.[2] The court set a

10   hearing on an order to show cause and directed Rose to respond to the Notice of Violation, which

11   he did. Min. Order (Feb. 7, 2025), ECF No. 111; Response, ECF No. 113. The court held the

12   hearing on February 13, 2025. *See* Mins. Mot. Hr'g, ECF No. 115. Peter Nascenzi and David

13   Goodwin appeared for plaintiff. *Id.* John Peebles, Tim Hennessy and Gregory Narvaez appeared

14   for defendants. *Id.* At hearing, the court granted leave for California to submit a surreply, which

15   it has. Surreply, ECF No. 121. The court denied defendants' subsequent request to file a

16   supplemental brief. Mot. File Supp. Brief, ECF No. 122; Min. Order (Mar. 7, 2025), ECF

17   No. 124.

18   **II.    LEGAL STANDARD**

19         As the court explained in its previous contempt order, "courts have inherent power to

20   enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*,

21   493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). "The

22   standard for finding a party in civil contempt is well settled: The moving party has the burden of

23   showing by clear and convincing evidence that the contemnors violated a specific and definite

24   order of the court." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting

25   *Stone v. City of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). Clear and convincing

---

[2] In an authorized surreply, California explained it recalculated Azuma's records and alleged the number of sold cigarettes actually exceeds thirty million. Nascenzi Decl. Surreply at 3, ECF No. 121-1.

4

1   evidence requires greater proof than preponderance of the evidence." *Sophanthavong v.*

2   *Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004). "To meet this higher standard, a party must

3   present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the

4   truth of its factual contentions [is] highly probable.'" *Id.* (quoting *Colorado v. New Mexico*,

5   867 467 U.S. 310, 316 (1984)).

6        Once the moving party meets its burden, "[t]he burden then shifts to the contemnors to

7   demonstrate why they were unable to comply." *Id.* "Judicial sanctions in civil contempt

8   proceedings may, in a proper case, be employed . . . to coerce the defendant into compliance with

9   the court's order[.]" *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947).

10   "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court

11   order, are considered to be coercive and avoidable through obedience, and thus may be imposed

12   in an ordinary civil proceeding upon notice and an opportunity to be heard." *Bagwell*, 512 U.S.

13   at 827.

14   **III.   ANALYSIS**

15        In support of its Notice of Violation, California submits numerous invoices, packing slips

16   and product order forms showing Azuma sold over twenty-nine million cigarettes since the court

17   issued its contempt order in February 2024. *See generally* Nascenzi Decl., ECF No. 119 (sealed).

18   In response, Rose asserts Azuma implemented a new business practice that requires purchasers to

19   pick-up cigarettes from the Tribe's reservation in transactions, and that this new practice either

20   does not violate § 376a(e)(2)(A) of the PACT Act or falls into an exception outlined in the Act.

21   Response at 5–8.

22        At hearing and in his response, Rose's counsel explained the new business method and

23   asserted that on March 5, 2024, he notified all Tribal Retailer customers that Azuma would

24   "temporarily halt deliveries of its products." Response at 6. Later that same day, Azuma

25   manager, Alyssa Rose, emailed the Tribal Retailer customers explaining that cigarette purchases

26   could be made via email and would be picked up on the Tribe's reservation by an "authorized

27   pick up person" whose identity would be "verified at time of pick up." Response at 4; Rose Decl.

28   Ex. B, ECF No. 113-2. At least ten different customers identified the same person, an individual

1    named Owen Ward, as their authorized pick-up person, and Ward transported the purchased

2    cigarettes to the buyers throughout California, sometimes hundreds of miles away from the

3    Tribe's reservation.  *See generally* Docs. Notice,  ECF No. 126 (redacted).

4           Rose asserts Azuma's sales are not "substantially identical" to the transactions that gave

5    rise to the preliminary injunction because there is no "delivery" of cigarettes occurring under

6    § 376a(e)(2)(A).  Response at 5.  Rose alternatively asserts the new sales method is not subject to

7    regulation under the PACT Act because the transactions are between Indians on Indian land.  In

8    support of his assertions, Rose submits a 1997 letter from Mark Van Norman, then–Deputy

9    Director of the Office of Tribal Justice of the Department of Justice (DOJ), to Barry Oslow, an

10   attorney at the Bureau of Alcohol, Tobacco and Firearms (ATF).  The letter describes the  DOJ's

11   position at the time on application of state taxes to cigarette sales by the Omaha Indian Tribe,

12   explaining that "[c]learly, the [Contraband Cigarette Trafficking] Act does not affect the right of

13   the Omaha Indian Tribe to sell cigarettes which it manufactures on reservation to non-Indians at

14   retail outlets on-reservation."  Peebles Decl. Ex. A (DOJ Letter) at 6, ECF No. 113.1.  Given the

15   timing of Rose's introduction of the letter, the court allowed California to file a surreply

16   regarding the legal positions the letter presented.  Mins. Mot. Hr'g.  Beyond the legal positions

17   taken in the letter and for the first time at hearing, Rose further contended that California

18   incorrectly relied on the language of § 376a(d) to show a violation when the preliminary

19   injunction only prohibits delivery under § 376a(e).

20          Many of Rose's arguments have been addressed either directly or indirectly by the court

21   in its previous orders.  The court addresses Rose's arguments here only to the extent necessary to

22   resolve the pending motion.

23          **A.    Delivery under the PACT Act**

24          The preliminary injunction in this case "is specific and definite."  Order (Feb. 28, 2024) at

25   4.  Rose, in his official capacity as vice-chairman of the Tribe and a president/secretary of Azuma

26   is enjoined from "completing or causing to be completed any delivery, or any portion of a

27   delivery, of packages containing cigarettes on behalf of Azuma in violation of

28   section 376a(e)(2)(A) of the PACT Act."  *Id.* (citing Prelim. Inj. Order at 24).  Rose nevertheless

1    argues that because a third person—most often Owen Ward—now picks up and delivers the

2    cigarettes on behalf of buyers, Rose plays no role in completing or causing to be completed any

3    delivery or portion of a delivery.

4         Rose's argument borders on the frivolous.  The PACT Act plainly prohibits individuals

5    from "causing" a delivery to be completed or completing a "portion of a delivery" for Azuma,

6    therefore extending to more than just the physical transport of cigarettes for Azuma, but also

7    those actions required to precipitate, plan and execute a delivery.  15 U.S.C. § 376a(e)(2)(A).

8    Under no good-faith interpretation of the statutory language could Rose reasonably believe he

9    could avoid the Act's requirements by the simple expedient of hiring a third person to transport

10   Azuma's cigarettes to buyers off-reservation.  *Cf. Black Lives Matter Seattle-King Cnty. v. City of

11   Seattle*, 505 F. Supp. 3d 1108, 1126 (W.D. Wash. 2020) ("[A] party should not be held in

12   contempt if its actions appear to be based on a good faith and reasonable interpretation of a

13   court's order." (internal quotations and citations omitted)).  Such an interpretation flies in the face

14   of the statute's purpose, given that Congress passed the PACT Act specifically to "make it more

15   difficult for cigarette . . . traffickers to engage in and profit from their illegal activities."  *See*

16   Prevent All Cigarette Trafficking Act of 2009, Pub. L. No. 111-154, § 1(c), 124 Stat. 1087, 1087–

17   88 (2010).

18        Rose's violations also are "clear, in part because they plainly violate the text of the

19   [preliminary injunction]."  *Black Lives Matter Seattle*, 505 F. Supp. 3d at 1126.  He "may not

20   nullify a decree by carrying out prohibited acts through aiders and abettors, although they were

21   not parties to the original proceeding."  *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945).  A

22   party can be held in contempt for deploying a third person to perform acts violating an injunction.

23   *See Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir.

24   2014).  In short, neither the PACT Act nor this court's orders provide a loophole permitting Rose

25   to continue deliveries in violation of the Act by engaging third-party deliverers.

26        Rose's arguments in response to the court's order to show cause continue a troubling

27   pattern.  The court's contempt order described Rose's assertion that the injunction could not apply

28   to Azuma as an attempt to "escape the consequences" of the court's order.  Order (Feb. 28, 2024)

7

1    at 5.  Here, his interpretation of the PACT Act is a similar attempt to avoid compliance with this

2    court's orders.  Rose and his counsel are cautioned that advancing similar arguments in the future

3    may result in sanctions, including new monetary sanctions, an order to show cause why counsel

4    should not be suspended from practice within this District, or both.  *See* Fed. R. Civ. P. 11; 28

5    U.S.C. § 1927.

6         **B.      Exceptions to Section 376a(e)(2)(A)**

7         Rose also contends the preliminary injunction does not apply to Azuma's transactions

8    because those transactions fall into a narrow exception under § 376a(e)(2)(A)(ii), which allows

9    deliveries to persons "lawfully engaged" in the cigarette business.  Rose relies on the general

10   principle the court explained in its prior order: state law is generally inapplicable—and cigarette

11   transactions are therefore lawful—when regulating "on-reservation conduct involving only

12   Indians."  *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 144 (1980); Prelim. Inj. Order

13   at 19–20.  In support of this assertion, Rose relies on the 1997 letter referenced above.  *See*

14   *generally* DOJ Letter.  The letter explains the Department of Justice's position on state taxation of

15   cigarettes manufactured by the Omaha Indian Tribe and sold on that Tribe's reservation.  In the

16   letter, then-Deputy Director Van Norman explained, "where the Tribe manufactures cigarettes for

17   resale to Indian and non-Indian consumers at retail outlets on its reservation, it is fairly clear that

18   the State may not tax or regulate the Tribe's cigarette business within tribal territory."  *Id.* at 5–6.

19   The letter further explains that the Contraband Cigarette Trafficking Act (CCTA), 18 U.S.C.

20   § 2341, "[c]learly . . . does not affect the right of the Omaha Indian Tribe to sell cigarettes which

21   it manufactures on-reservation to non-Indians at retail outlets on-reservation."  *Id.* at 6.  Rose

22   argues this letter supports the conclusion the PACT Act—a successor of the CCTA—[3]does not

23   apply to Azuma's cigarette sales or deliveries occurring face-to-face, on-reservation and between

24   Indians.

---

[3] Congress passed the CCTA in 1978, which focuses on interstate transportation, possession and the sale of cigarettes by organized criminal groups.  18 U.S.C. § 2341 (1978).  In 2010, Congress passed the PACT Act "to help combat cigarette trafficking by updating existing anti-trafficking laws and introducing new tools to combat illegal remote sales, such as those conducted over the Internet."  110th Cong. Senate Report 110-153 (Sept. 11, 2007).

1    Apart from the contents of the letter, Rose is correct that on-reservation transactions

2    "involving only Indians" are not subject to state regulation.  Response at 7; *see Washington v.*

3    *Confederated Tribes of Colville Indian Rsrv.*, 447 U.S. 134, 161 (1980).  But transactions

4    involving members of different tribes are not necessarily transactions "involving only Indians."

5    *See Confederated Tribes of Colville Indian Rsrv.*, 447 U.S. at 161 ("[T]he mere fact that

6    nonmembers resident on the reservation come within the definition of 'Indian' for purposes of the

7    Indian Reorganization Act of 1934, 48 Stat. 988, 25 U.S.C. § 479, does not demonstrate a

8    congressional intent to exempt such Indians from state taxation.").  When transactions involve

9    Indians and non-Indians or Indians from different Tribes, the Court has opined "the States have a

10   valid interest in ensuring compliance with lawful taxes that might easily be evaded through

11   purchases of tax-exempt cigarettes on reservations," and it has held "that interest outweighs

12   tribes' modest interest in offering a tax exemption to customers who would ordinarily shop

13   elsewhere." *Dep't of Tax'n & Fin. of N.Y. v. Milhem Attea & Bros.*, 512 U.S. 61, 73 (1994).

14   Given the Court's teaching in *Colville and Milhem*, Azuma's sales cannot reasonably be

15   described as face-to-face transactions on its own reservation.  The purchasing Tribal Retailers do

16   not purchase and pick up the cigarettes.  Instead, they place their orders by phone or email and

17   send a third-party delivery person to the reservation.  Even assuming transactions are "occurring"

18   on the reservation, the transactions involve Indians who are members of different Tribes and

19   therefore cannot be considered "conduct involving only Indians" as defined by the law.  *Cf.*

20   *Confederated Tribes*, 447 U.S. at 161.  Azuma's sales are not "lawful" under § 376a(e)(2)(A) and

21   are therefore not exempt from regulation under the PACT Act.

22   **C.    Section 376a(d)**

23   Rose further contends he did not violate the preliminary injunction because California

24   seeks to enforce § 376a(d), whereas the court enjoined violations of § 376a(e).  While Rose

25   correctly identifies the basis for the preliminary injunction, the court does not reach this

26   argument, for two reasons.  First, Rose did not present it in his response to California's Notice of

27   Violation.  His counsel first made the argument at hearing.  Second, it is not necessary to decide

28   whether California could also prove that Rose violated § 376a(d) for purposes of determining

whether Rose violated the preliminary injunction.  There is no dispute Azuma is on the PACT Act

prohibited sellers list and there is no dispute Rose continues to cause deliveries from Azuma.  The

court determined, as explained above, that § 376a(e)(2)(A) prohibits individuals, including Rose,

from "knowingly complet[ing], caus[ing] to be completed, or complet[ing] its portion of a

delivery of any package" for any noncompliant seller, including Azuma.  15 U.S.C.

§ 376a(e)(2)(A); *see also* Prelim. Inj. Order at 24–25.  That is, the question before the court is

whether Rose violated this court's preliminary injunction relying on § 376a(e)(2)(A). Any

violations of other sections of the PACT Act, including § 375, are irrelevant to the pending

matter.

## D.    Inability to Comply

By showing Rose continues to deliver cigarettes to the same customers previously

identified in the preliminary injunction record and covered by the court's order, California has

shown by clear and convincing evidence that Rose, in his official capacity as an officer of the

Tribe, violated the preliminary injunction.  The burden thus shifts to Rose to demonstrate why he

is unable to comply.  *See Sophanthavong*, 378 F.3d at 866.

Rose has not met his burden.  He instead challenges the merits of the preliminary

injunction, attempting to relitigate issues the court addressed in its prior orders.  Rose argues the

state "fails to recognize the economic realities of Azuma's Indian Tribal Government customers

and their dependence upon revenues from gaming and associated tobacco sales."  Response at 8.

But the court considered and addressed this argument at length in its prior orders and weighed the

interests of the parties.  Prelim. Inj. Order at 23; Order (April 23, 2024) at 2, ECF No. 88.  The

court's order "does not prohibit anyone from lawfully engaging in the cigarette business in

compliance with applicable federal law."  Order (April 23, 2024) at 2.  Rose and Azuma may sell

cigarettes, but they must do so in compliance with the PACT Act and this court's orders.

For the same reasons articulated in its prior orders, the court finds Rose has not shown an

inability to comply with the court's preliminary injunction order.  The court holds Rose in

contempt of court for violating the preliminary injunction.  Given the circumstances, the court

must now decide the appropriate manner for applying its prior order providing for prospective

10

1   sanctions.  Considering the complex procedural history of the case, the court determines, in its

2   discretion, a hearing on the proper application of the prospective sanctions order is necessary.

3   **IV.    CONCLUSION**

4          For the reasons set forth above, the court **finds defendant Darren Rose is in contempt of**

5   **court** for violating the preliminary injunction.  A hearing regarding the appropriate sanctions to

6   be imposed is set for **July 10, 2025,** at 10:00 a.m.  Defendant Darren Rose is **ordered** to appear in

7   person at the hearing.  The parties should come prepared to discuss application of the court's prior

8   order providing for prospective sanctions, the timeline and process by which the parties collected

9   and provided evidence of compliance or noncompliance with the court's preliminary injunction

10  order and how the court should address the possibility of future violations of the preliminary

11  injunction, should they occur.

12         IT IS SO ORDERED.

13  DATED:  May 23, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE