1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| State of California,  | No. 2:23-cv-0743-KJM-SCR |
| Plaintiff, | ORDER |
| v. | |
| Phillip Del Ros,a et al., | |
| Defendants. | |

In light of the court's prior order finding defendant Darren Rose in contempt for violating the preliminary injunction, the court held a hearing to determine whether to impose sanctions and if so in what amount or in what manner. Order (May 27, 2025), ECF No. 131. Having reviewed the record and the parties' respective statements, the court orders Darren Rose **to pay sanctions in the amount of $68,000.**

**I.      BACKGROUND**

In multiple previous orders, the court has summarized the relevant background of this case and the court incorporates that background by reference here. *See id.*; Prelim. Inj. Order, ECF No. 43; Mot. Dismiss Order (Jan. 24, 2024), ECF No. 58; Mot. Dismiss Order (Nov. 18, 2024), ECF No. 97; Prospective Sanctions Order (Nov. 18, 2024), ECF No. 95. In summary, California alleges Azuma Corporation (Azuma), a tribal corporation wholly owned by the federally recognized Alturas Indian Rancheria (the Tribe), distributes cigarettes to various retailers owned

1

1  by other Indian tribes (Tribal Retailers) in violation of the PACT Act.  *See generally* First Am.
2  Compl., ECF No. 68.

3       On September 7, 2023, the court granted California's Motion for a Preliminary Injunction
4  against Mr. Rose in his official capacity as the Vice Chairperson of the Tribe and
5  president/secretary of Azuma Corporation.  Prelim. Inj. Order at 24–25.  Specifically, the court
6  issued the following injunction:

> Defendant Darren Rose, in his official capacity as vice-chairman of the Alturas Indian Rancheria and as president/secretary of Azuma Corporation, and his employees and agents are hereby enjoined from completing or causing to be completed any delivery, or any portion of a delivery, of packages containing cigarettes on behalf of Azuma Corporation to anyone in California in violation of section 376a(e)(2)(A) of the PACT Act.

*Id.* at 24.

Defendants appealed the injunction, unsuccessfully.  *See* Notice of Appeal (Sept. 15, 2023), ECF No. 44; U.S. Court of Appeals Mem. (Sept. 10, 2024), ECF No. 94; *California v. Azuma Corp.*, No. 23-16200, 2024 WL 4131831 at *2 (9th Cir. Sept. 10, 2024).  While the appeal was pending the court found California submitted sufficient evidence to show Mr. Rose violated the preliminary injunction.  Order (Feb. 28, 2024).  The court also found Mr. Rose did not demonstrate an inability to comply with the preliminary injunction and held Mr. Rose in contempt, awarded attorneys' fees and provided for prospective and conditional sanctions.  *Id.* at 7–8 (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994)); Mot. Sanctions, ECF No. 82; Opp'n Sanctions, ECF No. 87; Reply Sanctions, ECF No. 91; Prospective Sanctions Order (Nov. 18, 2024).

The court, having anticipated Mr. Rose's possible future noncompliance, provided for prospective and conditional sanctions:

> Any future noncompliance with the preliminary injunction or the nonmonetary sanctions [provided by this order] will result in the following further sanctions: $10,000 for the first day of noncompliance, $12,000 for the second day of noncompliance, $14,000 for the third day of noncompliance, $16,000 for the fourth

/////

2

>   day of noncompliance, and $16,000 for the fifth day of noncompliance.
>   Noncompliance beyond the sixth day may result in a custodial sanction.

Prospective Sanctions Order (Nov. 18, 2024). The plain language of the order indicates the proposed dollar amounts are additive and cumulative. That is, on the fifth day of noncompliance the total sanctions amount is $68,000. The court also made clear it would not impose these sanctions without giving defendants a chance to respond:

>   The court will not impose any sanction . . . unless the state files a notice of violation
>   on the docket of this action, supported by a declaration of a person with knowledge
>   of the violation. The court will then promptly set a hearing on an order to show
>   cause why additional sanctions should not be imposed under this order.

*Id.*

California asserts it requested Azuma's reporting and recordkeeping within thirty days after the court issued the Sanctions Order on November 18, 2024. Not. of Violation at 3, ECF No. 109. "After several delays," the parties stipulated to a production schedule and Mr. Rose provided the required documents to the state on January 31, 2025. *Id.* Shortly thereafter, on February 5, 2025, California filed a Notice of Violation asserting Mr. Rose "completed or caused to be completed the delivery, or some portion of the delivery, of packages containing 29,376,000 cigarettes to persons throughout California" in the eleven months since the filing of the court's contempt order. *Id.* at 3. The court set a hearing on an order to show cause and directed Mr. Rose to respond to the Notice of Violation, which he did, through counsel. Min. Order (Feb. 7, 2025), ECF No. 111; Response, ECF No. 113. The court held a hearing on February 13, 2025. *See* Mins. Mot. Hr'g, ECF No. 115. On May 27, 2025, the court issued an order finding Mr. Rose in contempt of court for violating the preliminary injunction and set a hearing to address appropriate sanctions. At that hearing, Peter Nascenzi, James Hart and Byron Miller appeared for plaintiff. *See* Mins. Sanctions Hr'g, ECF No. 144. John Peebles and Tim Hennessy appeared for defendants. *Id.* As the court had ordered, defendant Darren Rose also was present. *Id.*

## II. LEGAL STANDARD

The court may use its civil contempt powers "for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04

(1947) (hereafter *UMWA*)); *see also Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (quoting *UMWA*, 330 U.S. at 303–04). This principle is equally applicable when the government is the party seeking the contempt order. *See, e.g.*, *UMWA*, 330 U.S. at 301–02. Sanctions for civil contempt are considered nonpunitive and "avoidable through obedience" to the court's order. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 831 (1994). Where the court imposes coercive contempt fines, the requirement of an "opportunity to purge," i.e., "reduce or avoid the fine through compliance" is what distinguishes civil from criminal contempt; civil contempt fines are fundamentally conditional in nature. *Id.* at 829 (citing *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947)); *see also Hicks v. Feiock*, 485 U.S. 624, 632–33; *United States v. Ayres*, 166 F.3d 991, 997 (9th Cir. 1999) ("Civil contempt sanctions . . . are only appropriate where the contemnor is able to purge the contempt by his own affirmative act . . . ."). As the court's prior order signaled, coercive imprisonment is another form of sanctions available to the court under its "contempt power." *See Doyle v. London Guar. & Acc. Co.*, 204 U.S. 599, 606–08 (1907). And like all coercive sanctions, a custodial sanction is only appropriate where the contempt may be purged. *See id.* at 607 ("[W]hile the party may suffer imprisonment, he carries the keys of the prison in his own pocket and, by compliance with the order of the court, may deliver himself from punishment." (internal quotations and citations omitted)). Consequently, civil contempt sanctions "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Bagwell*, 512 U.S. at 827. "Neither a jury trial nor proof beyond a reasonable doubt is required." *Id.* In contrast, unlike here, a court exercises its criminal contempt power only when it intends to punish the contemnor and vindicate the court's authority. *UMWA*, 330 U.S. at 302.

In imposing coercive civil sanctions, the court "must . . . consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* at 304. "[A] party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Taggart*, 139 S. Ct. at 1802. In contempt cases, the court should use "[t]he least possible power adequate

4

to the end proposed." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987) (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)).

### III.   ANALYSIS

Having found Mr. Rose in contempt, the court must determine the appropriate sanction to impose. In exercising its discretion to impose civil sanctions to ensure compliance with its order, the court considers "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *UMWA*, 330 U.S. at 303–04. "[I]n fixing the amount of a fine to be imposed . . . as a means of securing future compliance, [the court must also] consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." *Id.*

The court in its discretion determines a monetary sanction is warranted given Mr. Rose's months of conduct in violation of the court's order. The court finds its prior prospective sanctions order instructive and reflective, if conservatively so, of the "character and magnitude of the harm threatened by the continued contumacy." *Parsons v. Ryan*, 949 F.3d 443, 457 (9th Cir. 2020) (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983)). At hearing, the parties agreed that prior prospective sanctions order, which signaled cumulative sanctions for up to five days of violations, provides the appropriate monetary sanctions at this time. *See* Mins. Sanctions Hr'g.

Even though its prior order cautioned Mr. Rose that a civil custodial sanction was a possibility, the court in its discretion declines to impose custody at this time. The prior order does not clearly set forth how a custodial sanction could be purged, and the lack of clarity weighs significantly against imposing custody now. *Cf. Doyle*, 204 U.S. at 606–08. Moreover, at hearing the parties agreed Mr. Rose's documented violations do not rise to the level warranting a custodial sanction.

The court therefore orders Darren Rose to pay sanctions in the amount provided by its prior order, adding the sanctions amount for each day up to five days. Specifically, the court orders Mr. Rose to **pay sanctions in the total amount of $68,000.** The court reserves the possibility of custodial sanctions for further clarification as appropriate if the record is

supplemented to support the issuance of a clarifying order putting Mr. Rose on notice and spelling out ways to purge any contempt.

### IV.   FUTURE VIOLATIONS

As noted above, the court maintains civil contempt powers "to coerce the defendant into compliance with the court's order" and "to compensate the complainant for losses sustained." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *UMWA*, 330 U.S. at 303–04).

Given that the prior prospective sanctions order did not coerce defendants into compliance, California may seek a revised prospective sanctions order from the court, if it believes such an order is warranted and doing so is consistent with counsel's obligations under Federal Rule of Civil Procedure 11.  Any proposed order must outline a clear timeline for ongoing document production and any additional monetary sanctions.  Should California also seek an order providing for a civil custodial sanction, it must clearly identify what action it believes Rose could take to purge such a sanction. *See Ayres*, 166 F.3d at 997 ("Civil contempt sanctions . . . are only appropriate where the contemnor is able to purge the contempt by his own affirmative act . . . ."); *Doyle*, 204 U.S. at 606–08.  California shall file any proposed revised prospective sanctions order within thirty days of the filing date of this order.  Defendants may file any objections to a proposed order within fourteen days thereafter, at which point the matter will be submitted.

All other conditions of the court's previous injunction and Sanctions Order remain in effect unless and until the court imposes a revised and superseding prospective sanctions order.

### V.   CONCLUSION

For the foregoing reasons, Darren Rose is ordered to pay **civil contempt sanctions in the total amount of $68,000** within seven days from the filing of this order.  The sum is to be paid personally by Mr. Rose.  Sanctions are payable to the clerk of court.  Within fourteen days from the filing of this order, Mr. Rose shall **file a declaration** on the docket of this matter attesting to his payment in compliance with this order.

1    California shall **file any proposed revised sanctions** order within thirty days of the filing
2    date of this order.  Defendants may file any objections to the proposed order within fourteen days
3    thereafter.
4    IT IS SO ORDERED.
5    DATED:  August 14, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE