UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| State of California, | No. 2:23-cv-0743-KJM-SCR |
| Plaintiff, | ORDER |
| v. | |
| Phillip Del Rosa et al., | |
| Defendants. | |

The State of California has filed two Notices of Violation asserting defendant Darren Rose has again violated the court's preliminary injunction enjoining cigarette transactions in violation of federal law. *See* Not. Violation (Aug. 28, 2025) (NOV III), ECF No. 164; Not. Violation (Sept. 11, 2025) (NOV IV), ECF No. 179. After carefully reviewing the record related to the violation notices and the governing case law, as well as the docket of the case and the language of the preliminary injunction, Prelim. Inj. Order, ECF No. 43, the court finds Mr. Rose has in fact again violated the preliminary injunction. The court therefore finds **Mr. Rose in contempt of court and imposes monetary sanctions in the amount of $136,000** as provided by the court's orders providing for sanctions that was in effect at the time of the violations covered by the State's two notices. *See* Prosp. Sanction Order (Nov. 18, 2024), ECF No. 95.

While the Notices of Violation were pending, defendants filed a Motion to Clarify the court's preliminary injunction. Mot. Clarify, ECF No. 170. The motion presents substantially the

1

1  same arguments Mr. Rose advanced in his response to the state's two notices.  *Compare id. with*
2  Rose NOV Opp'n, ECF No. 169.  As explained below, the court **denies the Motion to Clarify as**
3  **moot.**

4  **I.    BACKGROUND**

5        The court summarizes the relevant background only to the extent necessary to resolve the
6  pending Notices and without reiterating the substance of the numerous previous orders the court
7  has issued.  *See* Prelim. Inj. Order; Mot. Dismiss Order (Jan. 24, 2024), ECF No. 58; Mot.
8  Dismiss Order (Nov. 18, 2024), ECF No. 97; Prospective Sanctions Order (Nov. 18, 2024), ECF
9  No. 95; Second Contempt Order (May 27, 2025), ECF No. 131; Sanctions Order (Aug. 15, 2025),
10 ECF No. 162; Am. Prospective Sanctions Order (Oct. 2, 2025), ECF No. 194.  Azuma appears on
11 the PACT Act non-compliant list, which is described by the Act as "a list of delivery sellers of
12 cigarettes or smokeless tobacco that have not registered with the Attorney General of the United
13 States pursuant to section 2(a), or that are otherwise not in compliance with this Act."  15
14 U.S.C. 376a(e)(1)(A).  It is Azuma's placement on the list of non-compliant "delivery sellers" by
15 the Attorney General of the United States that triggers the statutory requirements the state has
16 moved to enforce.  In short, the court granted California's motion for a preliminary injunction and
17 enjoined Mr. Rose in his official capacity as vice-chairman of the Alturas Indian Rancheria and as
18 president/secretary of the Azuma Corporation from delivering cigarettes to anyone in California
19 in violation of the federal Prevent All Cigarette Trafficking Act (PACT Act or the Act) §
20 376a(e)(2)(A).  The Ninth Circuit affirmed the court's injunction.  *See* Notice of Appeal (Sept.
21 15, 2023), ECF No. 44; U.S. Court of Appeals Mem. (Sept. 10, 2024), ECF No. 94; *California v.*
22 *Azuma Corp.*, No. 23-16200, 2024 WL 4131831 at *2 (9th Cir. Sept. 10, 2024).  The injunction
23 provides, in relevant part:

24           Defendant Darren Rose, in his official capacity as vice-chairman of
25           the Alturas Indian Rancheria and as president/secretary of Azuma
26           Corporation, and his employees and agents are hereby enjoined from
27           completing or causing to be completed any delivery, or any portion

28 /////

|   |   |
|---|---|
| 1 | of a delivery, of packages containing cigarettes on behalf of Azuma |
| 2 | Corporation to anyone in California in violation of section |
| 3 | 376a(e)(2)(A) of the PACT Act. |

Prelim. Inj. Order at 24.

Since September 2024, the court has twice found Mr. Rose in contempt of court for violating the preliminary injunction; and the court imposed monetary sanctions in the amount of $68,000 consistent with the court's then-effective order providing for prospective sanctions. *See* First Contempt Order (Feb. 28, 2024), ECF No. 71; Second Contempt Order (May 27, 2025) at 6–7; Sanctions Order (Aug. 15, 2025).

California filed its third Notice of Violation (NOV III) on August 28, 2025, and the State submitted evidence it represents shows Mr. Rose violated the court's preliminary injunction by selling to two on-reservation entities, Desert Rose Casino and AIR Fuels, on at least five days during the month of July 2025. *See* NOV III. California requests the court impose additional monetary sanctions as outlined in a new proposed sanctions order, which the court has now adopted as of October 2, 2025. *See id.*; Pl.'s Prop. Sanctions, ECF No. ECF No. 163; Am. Prospective Sanctions Order (Oct. 2, 2025).

The court ordered Mr. Rose to respond to California's third violation notice, which he did on September 4, 2025, arguing Azuma completed only "face-to-face" transactions at the Azuma factory with other corporations wholly owned by the Alturas Indian Rancheria. *See generally* Rose NOV Opp'n. Also on September 4, defendants filed a Motion to Clarify the Scope of the Preliminary Injunction and submitted supporting declarations stating their only sales were to Desert Rose and AIR Fuels, corporations wholly owned by and located on the Alturas Rancheria's reservation. Mot. Clarify, ECF No. 170; Decl. A. Rose ¶ 3, ECF No. 170-2. Mr. Rose later filed a Notice of Errata indicating Azuma also had completed a "face-to-face" transaction on August 7, 2025, with the manager of the Rabbit Traxx store located on the Cedarville Rancheria (Cedarville), a neighboring federally recognized Indian tribe. *See* Not. Errata, ECF No. 177; Supp. Decl. A Rose ¶¶ 3, 10.

1       California filed its fourth Notice of Violation (NOV IV) shortly thereafter, submitting evidence Mr. Rose continued making sales in violation of the preliminary injunction order through August 2025, making at least five days of violative sales, and again asking the court to impose monetary sanctions. *See* NOV IV. California also filed a reply to Mr. Rose's response, as permitted by the court, and the State characterized the filing as both a reply and an opposition to defendants' Motion to Clarify. Pl.'s NOV Reply at 2 n.1, ECF No. 178. Defendants replied to California's filing. Defs.' Mot. Clarify Reply, ECF No. 186.

Consistent with the Local Rules and in its discretion, the court submitted the Motion to Clarify on the papers, without holding a hearing. *See* Min. Order (Sept. 25, 2025), ECF No. 190. The court held a hearing on the Notices of Violation on September 25, 2025. *See* Mins. Hr'g (Sept. 25, 2025), ECF No. 190. Peter Nascenzi, James Hart and David Goodwin appeared for California. *Id.* John Peebles, Tim Hennessy and Gregory Narvaez appeared for Mr. Rose. *Id.* Mr. Rose was also present, as ordered by the court. *Id.*; *see* Min. Order (Sept. 12, 2025). Considering their overlap, the court addresses the third and fourth Notices of Violation and the Motion to Clarify in this order.

## II.   LEGAL STANDARD

As the court has previously explained, "courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). "Clear and convincing evidence requires greater proof than preponderance of the evidence." *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004). "To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions [is] highly probable.'" *Id.* (quoting *Colorado v. New Mexico*, 867 467 U.S. 310, 316 (1984)).

Once the moving party meets its burden, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." *Affordable Media*, 179 F.3d at 1239 (quoting *Stone*, 968 F.2d at 856 n.9). "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed . . . to coerce the defendant into compliance with the court's order[.]" *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947). "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994)..

## III.   ANALYSIS

California has submitted invoices, packing slips and declarations in support of its third and fourth violation notices, showing Azuma sold over 792,000 cigarettes during July and August 2025. *See* NOV III & IV; Sealed Event (Sept. 5, 2025), ECF No. 173; Sealed Event (Sept. 17, 2025), ECF No. 185. In his response, Mr. Rose asserts the sales do not violate the preliminary injunction because they are intratribal sales made face-to-face and therefore do not fall under the Prohibited Delivery Provision of the PACT Act. *See* Rose NOV Opp'n at 3–9 (citing 15 U.S.C. § 376a(e)(2)(A)). Mr. Rose's response does not address the sales to Cedarville Rancheria in his briefing,[1] but at hearing his counsel argued those sales, while not intra-tribal, also occurred "face-to-face" and are therefore not subject to PACT Act regulation.

### A.   Sales Covered by the PACT Act

Mr. Rose's response now raises substantially the same argument as he has in response to the first two Notices of Violation: that the injunction enjoins only "delivery sales," which, as defined by the PACT Act, does not include cigarettes sold in face-to-face transactions. *See* Rose NOV Opp'n at 3; Contempt Order (May 27, 2025) at 7 (describing this argument as "border[ing] on the frivolous"). Mr. Rose also argues that California's argument improperly attempts "to extend the Preliminary Injunction to bar all business activities by Azuma." Rose NOV Opp'n

---

[1] The Notice of Errata acknowledging these sales was not filed until after Mr. Rose submitted his response to California's NOV III. *See* Not. Errata.

at 2.  California vigorously disagrees and asserts the preliminary injunction and the language of the PACT Act itself provide for a broad albeit not comprehensive prohibition, including of the transactions Mr. Rose completed in July and August of this year.  At hearing, California further explained that the preliminary injunction and the PACT Act do not prohibit Azuma from engaging in lawful sales, including to entities outside of California or to distributors who are licensed in the state of California.  *See* Transcript at 9–10, ECF No. 193.  California does not concede that all sales that are between tribal entities are per se exempt from regulation and taxation under the PACT Act.

      The court agrees with the State that the PACT Act's § 376a(e)(2)(A) prohibition, on which the preliminary injunction relies, applies broadly and encompasses the conduct in which Mr. Rose has engaged as reflected in the third and fourth notices of violation.  The PACT Act prohibits any person or entity placed on the non-compliant list, including Azuma, from "knowingly complet[ing], caus[ing] to be completed, or complet[ing] [their] portion of a delivery of any package for" a listed entity.  15 U.S.C. § 376a(e)(2)(A).  As relevant here, where Congress intended to regulate only remote transactions, it said so expressly.  *See, e.g.*, 15 U.S.C. § 376a(b)(4) (referring specifically to when a "delivery seller . . . mails or ships tobacco products") and § 376a(d) (entitled "Delivery," but limited to deliveries "pursuant to a delivery sale").  By contrast, § 376a(e)(2)(A) broadly prohibits any person from "complet[ing], caus[ing] to be completed, or complet[ing] its portion of a delivery of any package for any person whose name and address are on the [non-compliant] list," without narrowing its coverage to only remote or mail-based orders.  The court's preliminary injunction mirrors the statutory language, prohibiting Mr. Rose from "completing or causing to be completed any delivery, or any portion of a delivery, of packages containing cigarettes on behalf of Azuma Corporation to anyone in California."  Prelim. Inj. Order at 24.  Nothing in either the statutory text or the court's injunction narrows "delivery" in the context of § 376a(e)(2)(A) to exclude transactions that might be characterized as "face-to-face."  At hearing, California argued the term "face-to-face," which defendants use repeatedly in their briefing and argument, does not appear in the PACT Act.  California is technically correct, but the Act does define "delivery sales" as those sales made by

6

1  telephone, mail or internet or when "the seller is otherwise not in the physical presence of the
2  buyer." 15 U.S.C. § 375(a)(5)(A). For the reasons explained above, the physical presence
3  exception does not apply in the context of § 376a(e)(2)(A) because the PACT Act and the
4  preliminary injunction do not narrow the definition of "delivery" to exclude face-to-face sales.

5  Nor does the PACT Act recognize the purported distinction Mr. Rose advances between
6  deliveries by third-party carriers and deliveries carried out through customers' "bona fide
7  employees." Rose NOV Opp'n at 8. In every transaction completed by Mr. Rose, the practical
8  reality is the same: Azuma transfers cigarettes from its manufacturing facility to a customer
9  retailer who is not licensed by the state, and that transfer is a "delivery" under the ordinary
10 meaning of the term and § 376a(e)(2)(A) of the PACT Act. *See* Pl.'s NOV Reply at 3 (*citing*
11 *United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) ("In determining the plain meaning of
12 a word, [courts] may consult dictionary definitions, which we trust to capture the common
13 contemporary understandings of the word." (citing *Transwestern Pipeline Co., LLC v. 17.19*
14 *Acres of Prop. Located in Maricopa Cnty.*, 627 F.3d 1268, 1270 (9th Cir. 2010))); *see Delivery*,
15 Black's Law Dictionary (12th ed. 2024) (defining "delivery" broadly as "[t]he formal act of
16 voluntarily transferring something; esp., the act of bringing goods, letters, etc. to a particular
17 person or place"). To find otherwise would create the "gaping enforcement gaps" this court
18 previously has recognized and taking pains to close. First Contempt Order (Feb. 28, 2024) at 6.
19 Adopting Mr. Rose's narrowing interpretation would open up this enforcement gap: leaving non-
20 compliant sellers free to evade the PACT Act by funneling cigarettes to customers' employees or
21 via in-person pickups would subvert Congress's stated goals of creating strong disincentives to
22 illegal smuggling of tobacco products, making it more difficult for cigarette traffickers to engage
23 in and profit from their illegal activities, and increasing collections of State and local excise taxes
24 otherwise avoided. PACT Act, Pub. L. No. 111-154, § 1(c), 124 Stat. 1087, 1087–88 (2010). In
25 sum, the term "delivery" as used in § 376a(e)(2)(A) and in the court's preliminary injunction is
26 consistent with its plain meaning and broad remedial purpose: any transfer of cigarettes from
27 Azuma to a California-based customer not otherwise licensed to distribute cigarettes in the state,
28 however arranged, constitutes a prohibited delivery.

1    Beyond presenting arguments about the meaning of "delivery" under the PACT Act, at
2 hearing Mr. Rose's counsel also invoked Supreme Court precedent addressing questions related
3 to state taxation of on-reservation activity, citing cases including *Moe v. Confederated Salish &*
4 *Kootenai Tribes*, 425 U.S. 463 (1976), *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164
5 (1973), and *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134
6 (1980).  While the parties agree there is no precedent that controls the court's specific
7 determination about the enforceability of the PACT Act here, Mr. Rose argues these cases
8 circumscribe the injunction, and by extension enforcement of the PACT Act, limiting the
9 injunction's scope with respect to transactions occurring on tribal land, such as the sales between
10 Azuma and Desert Rose and AIR Fuels.[2]  In response, California argues the quantity of cigarettes
11 sold by Azuma to Desert Rose and AIR Fuels—792,000 cigarettes between July and August—
12 supports an inference that these sales are made to nontribal members, and therefore are not
13 exempted under the caselaw preserving and supporting tribal sovereignty.[3]  *See* NOV III & IV;
14 Sealed Event (Sept. 5, 2025); Sealed Event (Sept. 17, 2025).  Mr. Rose does not rebut—either
15 with evidence or argument—the State's argument that the quantity of cigarettes sold supports an
16 inference that the transactions are not ultimately intratribal.

17    The court previously has considered the *Colville* case in issuing the preliminary
18 injunction, *see* Prelim. Inj. Order at 21, and has reviewed *Colville* once again along with the other
19 cases Mr. Rose cites, all decided before the PACT Act became law.  Having carefully considered
20 these cases and related precedent regarding the interplay of state regulation and tribal sovereignty
21 cited at hearing including *Moe*, 425 U.S., *McClanahan*, 411 U.S., and *Colville*, 447 U.S., the
22 court concludes they address the extent and limits of state regulatory authority over on-
23 reservation transactions involving tribal members.  *See Moe*, 425 U.S. (holding Montana could
24 not impose cigarette excise tax or personal property tax on tribal members for transactions or

---

[2] For the reasons discussed in this court's previous order holding Mr. Rose in contempt, these cases only prohibit state taxation on on-reservation activities between Indians of the same tribe, not Indians of different tribes.  Second Contempt Order (May 27, 2025) at 6–7.

[3] At hearing, California argued the number of Alturas member Indians is less than ten, and that the quantity of cigarettes sold, if solely made to tribal members, would constitute well over two-hundred cigarettes per day, per member Indian.  Transcript at 11.

property on the reservation, but finding Montana could require tribal retailers to collect the state cigarette tax on sales to non-Indians.); *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164 (1973) (holding Arizona could not impose a state income tax on the income of a Navajo Nation member residing and earning income entirely on the reservation, because state taxation of Indians in Indian country is preempted by federal law and infringes on tribal self-government); *Washington v. Confederated Tribes of the Colville Indian Reservation*, 447 U.S. 134 (1980) (holding Washington state could require tribal cigarette sellers to collect state cigarette and sales taxes on transactions with non-Indians, but could not tax cigarette sales to tribal members).

This court's injunction does not run afoul of any of the principles established by these cases. Rather, the relevant issue here is fundamentally different. Even if some portion of Azuma's sales might ultimately be exempt from taxation as "Indian income from activities carried on within the boundaries of the reservation," *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148 (1973) (citing *McClanahan*,411 U.S.), California is entitled to enforce a recordkeeping and taxation scheme to collect taxes on cigarette sales made to non-members, even when those transactions occur on-reservation. Here, Mr. Rose provides no evidence or argument to show the sales of Azuma cigarettes are made only to tribal members, and California's evidence regarding the quantity of cigarettes sufficiently supports an inference that Azuma cigarettes are being sold to non-members.

To the extent Mr. Rose argues the injunction provides the state with more than it has sought in the operative complaint, the court has carefully reviewed the complaint once again and is unpersuaded. *See, e.g.*, First Am. Compl. ¶¶ 10–12 . Second, given Azuma's placement on the non-compliant list, does Mr. Rose's delivery of cigarettes to Desert Rose and AIR Fuels qualify as a "delivery [] made to a person lawfully engaged in the business of . . . distributing, or selling cigarettes," such that this type of delivery falls under one of the PACT Act exceptions? 15 U.S.C. § 376a(e)(2)(A)(iii). As the state argues again, and persuasively, the record supports an inference that Azuma cigarettes are being sold to non-member Indians through Desert Rose and AIR Fuels, who are not lawfully engaged in distribution or sale of cigarettes because they are not licensed as required by California law. *See* Transcript at 11; First Am. Compl. ¶¶ 22–26.

9

1    In sum, California has presented sufficient evidence to show Mr. Rose has again violated
2    the preliminary injunction and Mr. Rose has not presented any argument showing he is unable to
3    comply with the court's order. *Palmateer*, 378 F.3d at 866. The court therefore holds Mr. Rose
4    in contempt of court for again violating the preliminary injunction in this case.

## IV. SANCTIONS

6    Having found California has presented clear and convincing evidence Mr. Rose again
7    violated the preliminary injunction, the court must determine the appropriate sanction in this
8    matter. California argues the court should impose sanctions according to the State's proposed
9    sanctions order, which the court had not yet adopted at the time of the conduct underlying the
10   Notices of Violation.[4] *See* Pl.'s Prop. Sanctions. Mr. Rose disagrees and argues California's
11   proposed sanctions order cannot be enforced without violating due process and the Supreme
12   Court's prohibition on criminal penalties in civil cases. *See* Rose NOV Opp'n at 9–10 (citing
13   *Bagwell*, 512 U.S. at 829). Mr. Rose further argues that the sanctions available under the court's
14   previous order, which was in effect at the time of his conduct, have been fully exhausted through
15   the court's prior imposition of the maximum amount of monetary sanctions available. *Id.* That
16   is, Mr. Rose argues he cannot be subject to any sanction for this round of violations. *Id.*

17   The court's order of August 15, 2025, imposing sanctions for the second set of violative
18   sales, and allowing California to propose a new prospective sanctions order made clear that the
19   then-existing sanctions framework continued to govern until a new prospective sanctions order
20   was formally adopted: "All other conditions of the court's previous injunction and Sanctions
21   Order remain in effect unless and until the court imposes a revised and superseding prospective
22   sanctions order." Sanctions Order (Aug. 15, 2025) at 6. That order plainly allowed Mr. Rose an
23   opportunity to object to California's proposal before any new prospective sanctions order would
24   take effect: "Defendants may file any objections to a proposed order within fourteen days
25   thereafter, at which point the matter will be submitted." *Id.* When the State filed NOV III and
26   IV, its new sanctions proposal was still pending, and Mr. Rose had not yet had the opportunity to

---

[4] The court has since granted California's request for a superseding sanctions order in part and denied the request in part. *See* Am. Prospective Sanctions Order (Oct. 2, 2025).

respond. Applying the State's proposed order retroactively to conduct occurring before its adoption would contravene the court's own directives and raise due process concerns by imposing penalties without notice and thereby blur the line between civil and criminal contempt, converting what would otherwise be a coercive, conditional fine into a punitive sanction applied after the fact. *See Bagwell*, 512 U.S. at 829.

The court therefore applies the first prospective sanctions order in effect at the time the state filed the third and fourth Notices of Violation. The court's first sanctions order provided: "[A]ny future noncompliance with the preliminary injunction or the nonmonetary sanctions above will result in the following further sanctions . . . ." Prosp. Sanction Order at 5. While Mr. Rose argues the prior prospective sanctions order has been "exhausted" and cannot support additional monetary sanctions for subsequent rounds of violations, that contention does not square with the plain language of the order directed to "any" future noncompliance. *See id.* Mr. Rose cites no case holding broadly that a prospective sanctions order, once imposed, cannot apply to subsequent violations.

Moreover, the coercive contempt fines are "fundamentally conditional in nature" and are designed to induce compliance going forward, not to expire after a single violation. *Id.* at 4. Here, the State's evidence shows Mr. Rose engaged in new acts of noncompliance while the prior order remained in effect. The monetary sanctions under the existing prospective order remain available.[5]

California presents evidence Mr. Rose completed violative sales at least five days in each July and August 2025. Under the court's first prospective sanctions order in effect at the time California filed the Notices of Violations covering these months, five days of violative sales calls for the imposition of $68,000 of monetary sanctions. Prosp. Sanction Order at 5. Each new

---

[5] For the same reasons discussed in the court's previous contempt order, the court declines to impose a civil custodial sanction at this time because the prospective sanctions order "does not clearly set forth how a custodial sanction could be purged, and the lack of clarity weighs significantly against imposing custody now." *See* Sanctions Order (Aug. 15, 2025) at 5 (citing *Doyle v. London Guar. & Acc. Co.*, 204 U.S. 599, 606–08 (1907)).

1  Notice of Violation identifies five days, and so this amount is doubled.  The court therefore

2  **orders Mr. Rose to pay sanctions in the total amount of $136,000.**

3  **V.    MOTION TO CLARIFY**

4  Finally, the court addresses defendants' Motion to Clarify the scope of the Preliminary

5  Injunction.  *See* Mot. Clarify.  Defendants themselves acknowledge the issues raised in their

6  motion substantially overlap with their response to the Notices of Violation. California likewise

7  characterized its reply in support of the third and fourth Notices of Violation as an opposition to

8  the motion.  *See generally* Rose NOV Opp'n at 1–3; NOV Reply.

9  As explained above, in the course of considering whether sanctions should be imposed

10  based on the most recent violations, the court has addressed the scope of the injunction,

11  construing "delivery" broadly to encompass all transfers of cigarettes from Azuma to those

12  customers who are not cigarette distributors licensed by the State, including face-to-face

13  transactions on tribal land, and confirming California's authority to impose a recordkeeping and

14  reporting scheme necessary to determine whether any transactions are taxable.  In this way, the

15  court has clarified application of the preliminary injunction to the facts supporting the recent

16  violation conduct.  Defendant's motion for clarification is therefore moot.

17  As the court has previously noted, nothing prevents Azuma from engaging in lawful

18  cigarette sales.  Lawful sales are made through transactions with licensed California cigarette

19  distributors, and thus compliant with the PACT Act.  Also, as the state emphasized at hearing, the

20  court's preliminary injunction does not extend outside California.

21  **VI.    CONCLUSION**

22  For the reasons set forth above, the court **finds defendant Darren Rose is in contempt of**

23  **court** for violating the preliminary injunction the court entered on September 8, 2023, ECF

24  No. 43, based on the sales reported by the state in support of its third and fourth notices of

25  violation  Darren Rose is ordered to pay civil contempt sanctions in the total amount of $136,000

26  within seven days from the filing of this order.  The sum is to be paid personally by Mr. Rose.

27  Sanctions are payable to the clerk of court.  Within fourteen days from the filing of this order,

1  Mr. Rose shall file a declaration on the docket of this matter attesting to his payment in
2  compliance with this order.
3      The defendants' Motion to Clarify, ECF No. 170, is **denied as moot.**
4      IT IS SO ORDERED.
5  DATED:  October 9, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE